IRWIN M. GOLDEN *vs.* BOARD OF SELECTMEN OF FALMOUTH.

Barnstable. November 4, 1970. — December 30, 1970.

Present: TAURO, C.J., SPALDING, KIRK, REARDON, & QUIRICO, JJ.

*Zoning*, Special permit, Wetlands. *Seashore.* *Statute*, Repeal. *Municipal Corporations*, By-laws and ordinances.

A zoning by-law of a town intended to protect natural resources and providing that before filling or excavating in any tidal marsh a special permit must first be obtained from the board of selectmen was a permissible exercise of municipal zoning power. [522–523]

The enactment of G. L. c. 130, § 27A, did not preclude municipalities from thereafter exercising regulatory control of coastal wetlands or repeal existing by-laws or ordinances relating thereto [523–524]; nor was there any repugnance between § 27A and a zoning by-law of a town providing that before filling or excavating in wetlands a special permit must be obtained from the board of selectmen. [524]

A denial by the board of selectmen of a town, acting under its zoning by-law, of a special permit to a landowner to construct a channel for his boats in a tidal marsh, for the reason that issuance of the permit "would not be providing for the reasonable protection and conservation of the natural resources and features of the Town," was not in excess of the board's authority; a previous order authorizing the project issued by the Director of Marine Fisheries pursuant to G. L. c. 130, § 27A, under which selectmen have only the power to "recommend" such measures to preserve wetlands "as may protect the public interest," did not affect the authority of the board under the zoning by-law. [522, 525]

BILL IN EQUITY filed in the Superior Court on October 27, 1967.

The suit was heard by *Kalus,* J.

*Robert Clayton* for the defendant.

*George T. Shaw,* for Conservation Law Foundation, Inc., amicus curiae, submitted a brief.

KIRK, J. This is a bill in equity brought by the plaintiff against the board of selectmen of the town of Falmouth (the board). The plaintiff is the owner of a tract of land in Falmouth extending from the edge of a pond through a tidal marsh to upland property. In May of 1967, pursuant to § 36 of the Falmouth zoning by-law, he applied to the board for a special permit to construct in the tidal marsh a twenty-four foot wide channel in which to dock his two boats. Under § 36 it is the board which is authorized to grant such a permit. See G. L. c. 40A, § 4. He also filed with the Director of Marine Fisheries, pursuant to G. L. c. 130, § 27A (the Act), a notice of his intention to construct the channel and a plan of the proposed project. The Director of Marine Fisheries issued an "Order of Conditions" authorizing the project. Thereafter, the board voted to deny the special permit to excavate in the tidal marsh.

The plaintiff then brought this bill in the Superior Court by way of appeal from the board's decision. The judge,

after a hearing, ruled that the board exceeded its authority in refusing to grant the plaintiff the special permit. The final decree annulled the board's decision and ordered the board to issue the permit subject to the conditions imposed by the Director of Marine Fisheries.

The board appeals from the final decree. The evidence is reported. The judge made findings of fact and rulings of law. The plaintiff did not submit a brief. Counsel for Conservation Law Foundation, Inc., amicus curiae, submitted a brief. The only issue presented by the appeal is whether the Act deprives the board, acting under a local zoning by-law, of the power to forbid the filling, dredging, or excavating of coastal wetlands in the town despite the approval of the undertaking by the Director of Marine Fisheries acting under the Act.

The purpose of the Act is to regulate the removal, filling, and dredging of areas bordering on coastal waters.[1] It has been held to be valid legislative enactment. *Commissioner of Natural Resources* v. *S. Volpe & Co. Inc.* 349 Mass. 104, 107.

---

[1] The Act provides in pertinent part: "No person shall remove, fill or dredge any bank, flat, marsh, meadow or swamp bordering on coastal waters without written notice of his intention to so remove, fill or dredge to the board of selectmen in a town or to the appropriate licensing authority in a city, to the state department of public works, and to the director of marine fisheries. Said notice shall be sent by registered mail at least thirty days prior to any such removing, filling or dredging. The selectmen or, in the case of a city, the licensing authority, shall hold a hearing on said proposal within twenty days of the receipt of said notice, notice of which hearing shall be given by them by publication in a newspaper published in such town or city, or if there be no newspaper published in such town or city, then in a newspaper published within the county, and shall notify by mail the person intending to do such removing, filling or dredging, the department of public works and the director, of the time and place of said hearing. The cost of such publication of notice shall be borne by the person filing the notice of intention to so remove, fill or dredge. The selectmen or licensing authority, as the case may be, may recommend the installation of such bulkheads, barriers or other protective measures as may protect the public interest and shall transmit forthwith to such person, the director and the department of public works a copy of any such recommendations. If the department of public works finds that such proposed removing, filling or dredging would violate the provisions of sections thirty and thirty A of chapter ninety-one, it shall proceed to enforce the provisions of said sections. If the area on which the proposed work is to be done contains shellfish or is necessary to protect marine fisheries, the said director may impose such conditions on said proposed work as he may determine necessary to protect such shellfish or marine fisheries, and work shall be done subject thereto."

1. In construing the Act the judge ruled that the board *acting pursuant to the Act* had the authority only to *make recommendations* to the appropriate State agencies and had no power to prevent the plaintiff from making the channel once the Director of Marine Fisheries approved it.[2] We read this ruling to be entirely based on the proposition that the Act in and of itself does not permit boards of selectmen to regulate local coastal wetlands once regulation by the director has been imposed. The ruling is framed within the context of the Act and it considers only whether the Director of Marine Fisheries or the board has the ultimate authority under the Act. We do not so view the case. The board made its decision pursuant to § 36 of the zoning by-law, not pursuant to the Act.[3]

2. Section 36 of the Falmouth zoning by-law is a permis-

---

[2] In pertinent part the judge's ruling states: "G. L. c. 130, § 27A, which is controlling on the issues in this case, requires that a person contemplating the filling or dredging of an area bordering on coastal waters to provide written notice of his intentions to: (1) the board of selectmen; (2) the state department of public works; and (3) the director of marine fisheries. It further requires the board of selectmen to hold a hearing, notice of which must be provided to the department of public works and the director of marine fisheries. After hearing the selectmen '*may recommend*' certain protective measures to be taken in the execution of the dredging or filling. If, as in the present case, the area on which the proposed work is to be done contains shell fish or is necessary to protect marine fisheries, the director '*may impose*' such conditions on the proposed work as he deems necessary. There is nothing in § 27A which lends countenance to the proposition that a board of selectmen has the authority to assume a veto power over proposed dredging or filling. The scope of the authority granted to boards of selectmen by the section is limited to recommending the installation of bulkheads, barriers or other protective devices. It is up to the director of marine fisheries to either reject the suggestions of the local body or to adopt them and impose them as conditions. Under the terms of § 27A, only the department of public works is given the power to prohibit the commencement of work if it finds that the work would violate the provisions of Chapter 91, §§ 30 and 30A. Perhaps most significant is the use of the words '*may recommend*' in § 27A when enumerating the powers conferred . . . [on] the boards of selectmen, and the words '*may impose*' with respect to the powers conferred on the director of marine fisheries."

[3] The decision of the board states in part, "Whereas, Paragraph 1 of Section 36 of the Zoning By-laws, entitled Wetlands Regulations, states that 'The purpose of this section is to provide for the reasonable protection and conservation of certain irreplaceable natural features, resources and amenities for the benefit and welfare of the present and future inhabitants of the Town,' . . . Be it Resolved, that the Board of Selectmen are of the opinion that the above special permit would not be providing for the reasonable protection and conservation of the natural resources and features of the Town."

sible exercise of municipal zoning power.[4]  *MacGibbon* v.
*Board of Appeals of Duxbury*, 356 Mass. 635, 636–637.  In the
*MacGibbon* case, this court held that a zoning by-law hav-
ing the same purposes as § 36, the one before us (protecting
the town's natural resources along its coastal areas) and
similar operative provisions (requiring a permit prior to
obstructing streams or tidal rivers or dredging and filling
wetlands and marsh areas), was expressly authorized by the
Zoning Enabling Act, G. L. c. 40A, § 2.  The board, there-
fore, had the power to deny the permit as long as its decision
was not "based on a legally untenable ground, or . . .
[was not] unreasonable, whimsical, capricious or arbitrary."
*MacGibbon, supra*, at 639.  *Gulf Oil Corp.* v. *Board of Appeals
of Framingham*, 355 Mass. 275, 277.  There is nothing be-
fore us showing that the board's decision did not comply
with this standard.

3. Having upheld the validity of § 36 we turn to the ques-
tion whether in enacting the Act the Legislature intended
to repeal existing laws relating to the same subject.  We
find nothing in the language of the Act expressly, impliedly
or inferentially suggesting that municipalities are deprived
or preëmpted from exercising regulatory control of wetlands
situated therein by means of zoning by-laws.  The Act
establishes a regulatory machinery at the State level in
which local boards of selectmen, the Department of Public
Works and the Director of Marine Fisheries each has a role.
There is no express reference in the statute that municipali-
ties may or may not otherwise undertake wetlands control
independent of the Act.

---

[4] Section 36 provides in part: "Wetlands Regulations.  1. The purpose of
this section is to provide for the reasonable protection and conservation of
certain irreplaceable natural features, resources and amenities for the bene-
fit and welfare of the present and future inhabitants of the Town. . . . 2. Any
person wishing to perform, or cause to be performed, any of the following
acts or operations shall first obtain a special permit from the Board of . . .
[Selectmen] after a duly advertised public hearing.  a) Obstructing, filling,
dredging, excavating or changing the course of any stream or tidal river.
b) Filling or excavating within any part of any marsh or tidal marsh or in
or along the shore of any pond so as to alter the shore line.  3. In granting a
permit for any of the foregoing, the Board of . . . [Selectmen] shall be
guided by current State and Federal laws, regulations or recommendations
pertaining to such acts or operations."

Similarly, we do not construe the Act as impliedly precluding regulation by municipalities. Although it is an established rule of statutory construction that "[T]he enactment of a statute which seems to have been intended to cover the whole subject to which it relates, impliedly repeals all existing statutes touching the subject," (*Doyle* v. *Kirby*, 184 Mass. 409, 411–412), this rule has been applied with caution. *Doherty* v. *Commissioner of Adm.* 349 Mass. 687, 690. In the *Doherty* case, the test was stated to be whether the prior statute or by-law is so repugnant to and inconsistent with a later enactment covering the same subject that both cannot stand. *Doherty* v. *Commissioner of Adm.*, *supra*, at 690. In applying this test, the court endeavors to determine whether the Legislature intended to repeal earlier related laws, including existing town by-laws, as well as whether there is a need for uniformity in the subject of the legislation. *Homer* v. *Fall River*, 326 Mass. 673. *McDonald* v. *Superior Court*, 299 Mass. 321.

4. We see no repugnance between the provisions of the Act and § 36 of the Falmouth zoning by-law. Each confers a separate and distinct type of authority upon the respective governmental bodies involved. The first sentence of the Act provides that no person shall remove, fill or dredge in any marsh, bank, and so forth, without giving notice to the local board of selectmen, to the State Department of Public Works, and to the Director of Marine Fisheries. Subsequent clauses confer limited jurisdiction on the State Department of Public Works to ban any project if there is a violation of G. L. c. 91, §§ 30 and 30A. Since the Department of Public Works took no part in this case, those provisions of the Act which confer limited authority upon it need not be construed. In aid of interpreting the statute as a whole, however, we observe that although the Act expressly gives the Department of Public Works final authority in certain instances, it does not necessarily follow that the Act repeals all local by-laws relating to the same subject. In *Crawford* v. *Building Inspector of Barnstable*, 356 Mass. 174, 180, it was held that "No special rights accrue to

Harbor View because the pier was constructed under a license granted by the Commonwealth's Department of Public Works. The license was 'subject to all applicable Federal, State, County and Municipal laws, ordinances and regulations.' Such licenses may not be used contrary to the terms of zoning by-laws." See *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515.

If a local board acting under the zoning by-law authorizes a project in violation of G. L. c. 91, §§ 30 and 30A, and the Department of Public Works vetoes it, that board would clearly be governed by the express legislative enactment and the decision of the Department of Public Works would prevail. There is no provision in the Act, however, which grants to the Department of Public Works the authority to authorize a project which such local board has vetoed. In most cases, a decision of this type by such local board would be final. As was held in the *Crawford* case, the party seeking the permit does not obtain any absolute rights once he receives State authorization; he is also subject to local ordinances and regulations.

5. The fact that the Act confers upon a local board the advisory power to make recommendations concerning the installation of certain protective measures "as may protect the public interest" does not, we think, preclude the authority of the local board acting under the zoning by-law to initially authorize or bar a project. The Act provides that the local board mentioned therein is to make recommendations and is to transmit them to the Director of Marine Fisheries and to the Department of Public Works. If the local board acting under the zoning by-law approves a project in coastal wetlands which involves shellfish or marine fisheries, then the Director of Marine Fisheries is free under the Act only to impose conditions on the project. In that event the local board pursuant to the Act may make recommendations as to how the work is to be done. There is nothing to suggest, however, that the board acting under the zoning by-law is powerless to refuse initial authorization.

Our construction of the Act logically permits each of the

respective governmental bodies, the local board of select-
men. under the Act, the Director of Marine Fisheries, the
Department of Public Works, and the local board acting
under the zoning by-law to carry out effectively the legisla-
tive and local policy of preserving and protecting coastal
wetlands.    Otherwise, if it were unnecessary to protect
shellfish or marine fisheries, and if the proposed project were
not in violation of G. L. c. 91, §§ 30 and 30A, there would
be no regulatory control.   The advances thus far made in
this Commonwealth with regard to environmental control
would be reversed if local communities were prevented from
exercising regulatory authority.   It is apparent to us that
the Legislature in enacting the Act did not attempt to cover
the entire field of coastal wetlands regulations to the ex-
clusion of regulation by local authority.   The Act does not
attempt to create a uniform statutory scheme.   It establishes
minimum Statewide standards leaving local communities
free to adopt more stringent controls.

It follows that the decree must be reversed. A new decree
is to be entered stating that the decision of the board of
selectmen was within its jurisdiction and no modification of
it is required.

*So ordered.*