OPINION OF THE JUSTICES TO THE GOVERNOR.

*Eminent Domain,* Authority for taking, Taking by Commonwealth.
  *Statute,* Validating statute. *Commonwealth,* Taking of property by
  eminent domain, Purchase of property. *Council.*

Many purported takings of real estate by eminent domain in behalf of
  the Commonwealth which were invalid solely for want of authority
  of the agencies making the takings to make them could be
  validated retroactively by a single curative statute supplying such
  authority with respect to all the purported takings provided that
  vested rights were not impaired, that the curative statute was
  precise and clear, and that it preserved rights to compensation and
  other constitutional rights and afforded a reasonable opportunity to
  assert them. |895–896, 897–900|

An appropriation act providing funds to an agency of the Common-
  wealth other than the Governor and Council to acquire real estate
  "by purchase or by eminent domain under" G.L. c. 79 would itself
  confer authority on the agency to purchase the real estate; the
  reference in the act to c. 79 would apply only to an acquisition of
  the land by eminent domain. |896, 900–901|

St. 1964, c. 740, § 4, repealed so much of G.L. c. 79, § 2, as required
  action by the Council in the making of takings of real estate by
  eminent domain in behalf of the Commonwealth; since the
  enactment of c. 740 takings under c. 79, § 2, may be made by the
  Governor alone. |897, 901–902|

On October 5, 1971, the Justices submitted the following
answers to questions propounded to them by the Governor.

To His Excellency, the Governor of the Commonwealth:

The Justices of the Supreme Judicial Court respectfully
submit their answers to the questions set forth in your re-
quest dated July 15, 1971, and submitted to us on the same
date. The questions have arisen in the light of the decision
in *Newton* v. *Trustees of State Colleges,* 359 Mass. 668.

That case held that no authority to take real estate by
eminent domain was conferred on the Trustees of State
Colleges by St. 1968, c. 476, item 8069–52, and that a pur-
ported taking by them was invalid. Your letter states that
your staff has discovered over 100 other similar appropria-

tion items and that a number of orders of taking were adopted by several State agencies in the belief that similar items were sufficient to give the agency receiving the appropriation the power of eminent domain. Thus the Commonwealth appears to be using and occupying a considerable amount of land it has never owned and in which it has never had any legal rights. In some instances the Commonwealth has erected buildings and other structures on such land. Your questions relate to the possibility of curative legislation or of curative action by the Governor and Council under G. L. c. 79, § 2.

The questions are:

"1. Where many state agencies, over a period of many years, have purported to make takings of land by eminent domain on behalf of the Commonwealth pursuant to appropriations in various statutes to the respective agencies 'for the acquisition of certain land, or land with buildings thereon, by purchase or by eminent domain under chapter seventy-nine of the General Laws', and such takings were invalid solely because of the absence of any additional legislation conferring the power of eminent domain upon the agencies receiving the appropriations, can such takings be validated retroactively by the passage of legislation containing a single curative provision relating to all such purported takings, such as the following:

"'Notwithstanding any provision of section two of chapter seventy-nine of the General Laws, the acts and proceedings of any department, board, commission, institution or other agency within the executive branch of the government of the commonwealth to which funds have at any time been made available by the general court for the acquisition of land by eminent domain under said chapter seventy-nine, in purporting to take such land under said chapter seventy-nine, and all acts in pursuance thereof, which were invalid solely by reason of the absence of any additional legislation ex-

pressly conferring the power of eminent domain upon such agency, are hereby validated and confirmed.'?

"2. If the answer to question 1 is in the negative, can such takings be validated retroactively by the passage of legislation inserting in each appropriation act a single provision, to take effect on the effective date of the act in which it is inserted, conferring the power of eminent domain upon any agency receiving such an appropriation thereunder, such as the following:

"'Section 2A.  Any agency of the commonwealth receiving an appropriation under section two of this act for the acquisition of land, or land with buildings thereon, by purchase or by eminent domain under chapter seventy-nine of the General Laws, is hereby authorized to take such land, or land with buildings thereon, on behalf of the commonwealth in accordance with said chapter seventy-nine.'?

"3. Where an appropriation act provides funds to an agency of the Commonwealth 'for the acquisition of certain land, or land with buildings thereon, by purchase or by eminent domain under chapter seventy-nine of the General Laws', but neither the appropriation act nor any other statute contains any further provision expressly authorizing the agency to purchase such land, does the agency have the power to purchase such land on behalf of the Commonwealth?

"4. If your answer to question 3 is in the negative, and many state agencies, over a period of many years, have purported to make purchases of land on behalf of, the Commonwealth pursuant to such appropriations which were invalid solely because of the absence of any additional legislation conferring the power to purchase land upon the agencies receiving the appropriations, can such purchases be validated retroactively —

" (a) By the passage of legislation containing a single curative provision relating to all such purported purchases, such as that suggested in question 1?

"(b) By the passage of legislation inserting in each such appropriation act a single provision, to take effect on the effective date of the act in which it is inserted, conferring the power to purchase upon any agency receiving such an appropriation thereunder, such as that suggested in question 2?

"5. Does s. 4 of c. 740 of the Acts of 1964, 'AN ACT RE-PEALING STATUTORY POWERS OF THE GOVERNOR'S COUNCIL WHICH INTERFERE WITH THE EFFICIENT OPERATION OF THE EXECUTIVE DEPARTMENT OF THE COMMONWEALTH', eliminate the powers of the Council under the following provision of G. L. c. 79, s. 2:

"'Where no other provision is made by law, a taking of land by eminent domain by or on behalf of the commonwealth shall be made by the governor and council. . . . .'?"

In response to our invitation to interested persons to file briefs not later than September 9, 1971, briefs were filed by the Attorney General, by the city of Newton and Samuel S. Dennis, Third, and others, plaintiff and interveners in *Newton* v. *Trustees of State Colleges, supra,* and by the Massachusetts Conveyancers Association.

1. Curative legislation, validating the acts of a public officer in excess of his authority, has been upheld by this court in a number of decisions. "The Legislature may confirm, adopt and ratify the acts of a public officer in excess of his authority if the Legislature could have originally granted such authority to the officer, provided vested rights are not impaired by such subsequent legislation." *Nichols* v. *Commissioner of Pub. Welfare,* 311 Mass. 125, 128–129. See *Spaulding* v. *Nourse,* 143 Mass. 490, 492–495; *Mattingly* v. *District of Columbia,* 97 U. S. 687, 690.

This principle has been applied to cases involving the condemnation of land. See Nichols, Eminent Domain (Rev. 3d ed.) § 24.2 [4]. In *Donnelly* v. *Dover-Sherborn Regional Sch. Dist.* 341 Mass. 497, 501, it was held that the Legislature had the power to cure retroactively defective notices of town meetings, with the effect of validating an order of taking.

*Loriol* v. *Keene*, 343 Mass. 358, is not to the contrary. There the court said, "Where curative statutes may affect personal or property rights they should be precise and clear. This should be particularly so where they relate to governmental action, which often involves the exercise of the right of eminent domain." *Id.* at 362. The curative legislation held ineffective in that case would have dispensed with the requirements imposed by eleven sections of G. L. cc. 79, 80 and 82; it might have disturbed the statutory procedures for recovery of compensation; and it affected such substantive matters as the precision of the description of the land taken.

In the situation presented by your request the defect relates solely to the authority of the agencies making the orders of taking, and curative legislation need not affect such substantive matters as the adequacy of the compensation paid or the definition of what is taken. We advise, therefore, that the Legislature may properly deal with the situation in a single curative act, even though, as in the *Loriol* case, it arises from failure to follow the statutory procedure on many occasions over a long period of time.

2. The qualifications must be observed, however, that vested rights must not be impaired, that private property must not be taken for a public use without reasonable compensation, and that the curative act must be precise and clear. *Boston & Lowell R.R.* v. *Salem & Lowell R.R.* 2 Gray, 1, 37. *Bernhardt* v. *Atlantic Fin. Corp.* 311 Mass. 183, 191. *Loriol* v. *Keene, supra.* In *Connecticut River R.R.* v. *County Commrs. of Franklin*, 127 Mass. 50, 57, the court said that a taking, which was invalid by reason of failure to provide

adequate and certain compensation, "did not alter the rights of the owner of the land," and "vested no title in the Commonwealth." It was held that a subsequent statute authorizing compensation did not cure the defect.

As against owners whose rights are not otherwise barred, the curative statute suggested in question 1 must therefore afford a reasonable opportunity thereafter to assert any constitutional rights they may have as of its effective date. So viewed, the form of statute suggested in question 1 does not observe the necessary qualifications. It contains no exception for vested rights and no provision saving rights to compensation. In the absence of such provisions, it would be invalid.

3. A particular problem is suggested with respect to the land which was the subject of the decision in *Newton* v. *Trustees of State Colleges, supra.* We are advised that the city of Newton has taken that land and paid for it and that it is now being held by the city for park, recreational and conservation uses. "The rule that public lands devoted to one public use cannot be diverted to another inconsistent public use without plain and explicit legislation authorizing the diversion is now firmly established in our law." *Robbins* v. *Department of Pub. Works,* 355 Mass. 328, 330. You state that you "have no intention of attempting to overcome the decision in the *Newton* case as it applies to the particular land involved in that case," but the curative act suggested in question 1 might be read as applying to that land. It would seem desirable to avoid ambiguity on this point.

4. There are numerous examples of curative legislation providing for saving periods during which existing rights can be preserved. See G. L. c. 184, § 19, as amended through St. 1956, c. 305; G. L. c. 184, § 24, as appearing in St. 1964, c. 311, § 1; G. L. c. 184, § 25, inserted by St. 1959, c. 294, § 1; G. L. c. 184, § 28, inserted by St. 1961, c. 448, § 1; G. L. c. 260, § 31A, as amended through St. 1968, c. 496. If such a provision were added to the curative act set forth in question 1 of your request, it seems unlikely

that it would expose the Commonwealth to serious financial liability, since most petitions for the assessment of damages for land takings are filed promptly. An owner who files a petition for damages under G. L. c. 79, § 14, cannot at the same time attack the validity of the taking. *Barnes* v. *Springfield*, 268 Mass. 497, 503. Furthermore, one who accepts a judicial award for damages is barred from challenging the taking thereafter. *Hatch* v. *Hawkes*, 126 Mass. 177, 181. *Parr-Angell* v. *Northampton*, 341 Mass. 729. Acceptance of a settlement under G. L. c. 79, § 39, has a similar effect. See *Eighth Sch. Dist. in Norton* v. *Copeland*, 2 Gray, 414, 419; *Titus* v. *Boston*, 149 Mass. 164, 166.

We therefore suggest that a curative statute could appropriately deal with the problems about which you have expressed concern if it saved the rights of owners who contested the validity of purported takings in court proceedings commenced before the decision in the *Newton* case, and permitted owners aggrieved by the curative statute to recover damages under G. L. c. 79. Such a statute could also explicitly preserve any bar by lapse of time or for any other reason.

Subject to our discussion of possible saving provisions, we answer question 1, "No."

5. Question 2 raises substantially the same problems as question 1. The changes necessary to make retroactively valid the legislation suggested in question 1 would also be necessary to make retroactively valid the legislation suggested in question 2. Since you state that this alternative is less desirable than the other, we do not analyze it further.

We answer question 2, "No."

6. The *Newton* case has no application to a purchase of land, as distinguished from a taking by eminent domain. Article 10 of the Declaration of Rights, relied on in that case, forbids a taking of the property of an individual "without his own consent, or that of the representative body of the people." It is taking by eminent domain that is to be construed with reasonable strictness, not purchase with the consent of the owner. We think that an appropri-

ation of money to a State agency for the acquisition of land "by purchase" is sufficient to authorize the agency to make the purchase. The qualification found in the appropriation in issue in the *Newton* case, "under chapter seventy-nine of the General Laws," limits only acquisition by eminent domain, not acquisition by purchase.

We answer question 3, "Yes."

7. You request an answer to question 4 only if the answer to question 3 is in the negative. Since we answer question 3 in the affirmative, no answer to question 4 is required.

8. Question 5 relates to the effect of St. 1964, c. 740, § 4, repealing certain powers of the Governor's Council. You correctly assume that reference to action "by the Governor and Council" under G. L. c. 79, § 2, in *Newton v. Trustees of State Colleges, supra*, simply followed the language of the statute, and that no suggestion was intended as to the effect of St. 1964, c. 740, § 4. There may exist a distinction between action "by the Governor and Council," acting as a single agency, and action by the Governor "with the advice and consent of the Council." *Opinion of the Justices*, 190 Mass. 616, 618. The form of words used in a statute does not conclusively determine which type of action is contemplated. *Opinion of the Justices*, 211 Mass. 632. Section 1 of St. 1964, c. 740, defines "advice and consent of the council" broadly, "however phrased."

Statute 1964, c. 740, § 4, with inapplicable exceptions, repealed "so much of each provision of the General Laws and of any special law as requires the advice and consent of the council with respect to any action or omission to act by the governor . . . , including without limitation, any . . . purchase, *acquisition*, sale, conveyance, disposition or transfer, . . ." (emphasis supplied). The majority report of the Joint Legislative Committee on State Administration, in recommending rejection of the measure before it was approved by the voters, said, "If this measure were to become law, the Governor's Council would also be eliminated from its present statutory role in . . . assenting to

eminent domain takings on behalf of the Commonwealth."
1964 House Doc. No. 3531, p. 6.

We think that, in order to give meaning to the statutory
language emphasized above, the 1964 statute must be read
to repeal so much of G. L. c. 79, § 2, as required action by
the Council, and that takings under that section may now
be made by the Governor alone. Such a reading comports
with the legislative history recited above. It also seems
to be in harmony with opinions of the Attorney General
rendered shortly after the enactment of the 1964 statute.
See Rep. A. G., Pub. Doc. No. 12, 1965, pp. 126–127, 149–
152, 322–323; Rep. A. G., Pub. Doc. No. 12, 1966, pp. 192–
193, 237–239, 287–289; Rep. A. G., Pub. Doc. No. 12,
1967, p. 72.

We answer question 5, "Yes."

> G. JOSEPH TAURO.
> R. AMMI CUTTER.
> JACOB J. SPIEGEL.
> PAUL C. REARDON.
> FRANCIS J. QUIRICO.
> ROBERT BRAUCHER.
> EDWARD F. HENNESSEY.