KATHERINE M. HAMILTON vs. CONSERVATION COMMISSION
OF ORLEANS & another.[1]

Barnstable.  March 19, 1981. — August 21, 1981.

Present: ARMSTRONG, PERRETTA, & DREBEN, JJ.

*Wetlands Protection Act. Municipal Corporations,* Conservation com-
mission. *Practice, Civil,* Parties, Amendment, Dismissal. *Adminis-
trative Law,* Judicial review, Exhaustion of remedies. *Eminent Do-
main,* What constitutes taking.

Where a town's conservation commission denied a landowner permission
to proceed with construction of a house as described in a notice of in-
tent filed pursuant to G. L. c. 131, § 40, and the Department of Envi-
ronmental Quality Engineering subsequently issued a decision prohib-
iting the construction as described and imposing by a superseding
order numerous conditions which would be required for any such pro-
posed construction on the site, the department, and not the local au-
thority, was liable for any taking of the land resulting from the pro-
ceedings under c. 131, § 40. [364-370]
Where a plaintiff failed to name as a defendant an indispensable party, the
action was properly dismissed pursuant to Mass.R.Civ.P. 19. [370-372]
A landowner was not required to seek review under G. L. c. 30A, § 14, of
a decision by the Department of Environmental Quality Engineering
denying her permission to proceed with construction of a house on her
land as described in a notice of intent filed pursuant to c. 131, § 40,
prior to bringing an action against the department for an unlawful
taking. [372-374]
Even though a decision by the Department of Environmental Quality En-
gineering denying a landowner permission to proceed with construc-
tion as described in a notice of intent filed pursuant to G. L. c. 131,
§ 40, provided that the landowner could file a new notice of intent so
long as it complied with certain conditions, the landowner was not
precluded from bringing an action against the department for an un-
lawful taking. [374-375]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 15, 1980.

---

[1] The town of Orleans.

A motion to dismiss was heard by *Travers, J.*

*Daniel J. Fern* for the plaintiff.

*Lawrence O. Spaulding, Jr.,* for the defendants.

PERRETTA, J.  The plaintiff wished to build a house on her land located on the shore of Cape Cod Bay in the town of Orleans.  She filed a notice of her intent to do so with the defendant commission, as required under the Wetlands Protection Act, G. L. c. 131, § 40, as amended through St. 1977, c. 131.  The commission denied permission to proceed with the work described in her notice of intent, and she appealed to the Department of Environmental Quality Engineering (DEQE), which set numerous conditions on her plans to build.  While of the belief that these conditions constituted a prohibition against construction of any house on the land, the plaintiff did not seek judicial review pursuant to G. L. c. 30A, § 14, because, as she maintains, the DEQE's decision does not suffer from any of those defects specified in c. 30A, § 14(7)(a) through (g).  Rather, she accepted the decision of the DEQE and relies upon it as the basis of her present action against the defendants, in which she alleges that the commission's denial of her notice of intent and the final decision of the DEQE constituted a taking of her land without just compensation.  The plaintiff's complaint was dismissed, without prejudice, pursuant to the defendants' motion to dismiss brought under Mass.R.Civ.P. 12(b)(6) and (7), 365 Mass. 755 (1974), and she appeals. We conclude that the plaintiff's action does not lie against these defendants, and we affirm the judgment of dismissal.

The record appendix includes the complaint, the motion to dismiss, a supporting affidavit from the chairman of the commission, and, by way of attachment to that affidavit, the decisions of the commission and the DEQE and the trial judge's memorandum of decision.  This appeal turns on the propriety of the procedure followed by the plaintiff and not upon the factual basis for the denial of her notice of intent. Consequently, in reaching our decision we accept all of the factual assertions of the plaintiff, as supplemented by the defendants.  See *Lowell Gas Co.* v. *Attorney Gen.,* 377

Mass. 37, 39 (1979); *United States Fid. & Guar. Co.* v. *N.J.B. Prime Investors,* 6 Mass. App. Ct. 455, 456 & n.2 (1978); *Reiter* v. *Northampton,* 10 Mass. App. Ct. 821 (1980).[2]

The facts are as follows. The plaintiff, together with her husband prior to his death, has owned the land at issue for some twenty years. The northwest border of the property fronts directly on Cape Cod Bay and is approximately 350 feet long. The land is in an area zoned for residential use, and it has been assessed for purposes of real estate taxes at $50,000.

Because the plaintiff intended to build on land situated on the shoreline, she filed a notice of intent and the plans for the proposed construction project with the defendant commission on October 28, 1977, as required by G. L. c. 131, § 40.[3]

---

[2] The trial judge's memorandum of decision shows that he considered those matters set out in the defendants' affidavit. Rule 12(b), 365 Mass. 755, provides in pertinent part: "If, on any motion asserting the defense numbered (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ." The plaintiff has never disputed or controverted the accuracy of the information provided by the defendants, and the facts which they presented supplemented rather than contradicted the plaintiff's allegations concerning the procedural history of her case. It does not affect the outcome of this case whether we view the motion as the trial judge did, i.e., as one brought under rule 12(b)(6) and (7), or whether we treat it as a motion brought under Mass.R.Civ.P. 56, 365 Mass. 824 (1974). The result is the same in either event. See *Woodbridge* v. *Worcester State Hosp.,* 384 Mass. 38, 39 n.4 (1981).

[3] The statute provides in pertinent part: "No person shall . . . alter any . . . coastal wetland, beach, dune . . . marsh . . . or swamp bordering on the ocean . . . or any land subject to tidal action, coastal storm flowage, or flooding . . . without filing written notice of his intention to [do] so . . . and without . . . complying with [any] order of conditions" issued regarding such alteration. The notice of intent is to be filed with the town conservation commission, and copies are to be filed with the Department of Environmental Quality Engineering. Following receipt of such notice, the commission "shall hold a public hearing on the proposed activity" and "shall make a written determination as to whether this section is applicable to any land or work thereon." If, after hearing, the commission determines that the land "is significant to . . . flood control, to storm damage prevention, to prevention of pollution, to protection of land containing shellfish, or to the protection of fisheries," the commission "shall by writ-

We need not detail the reasons given by the commission for its denial; it is sufficient to relate that its decision was based upon a determination that the land on which the work was to be done was significant to those interests protected by § 40 and that those interests would be endangered by the intended construction. In its decision the commission stated that it "has not considered and does not rule on at this time other activities which are of different size, materials, location, design, or type which the applicant may propose at a later date."

The plaintiff pursued her statutory right to request the DEQE to make its own determination on her proposal. On February 24, 1978, the DEQE issued its order of conditions which superseded the commission's and which allowed "the proposed work to proceed." The DEQE found that the project would not involve any of the interests specified in § 40 and cited by the commission in its order of denial.. The commission then requested that the DEQE reconsider its order. A "full adjudicatory hearing" was held before another DEQE hearing officer, and on February 14, 1980, the DEQE issued a "final decision" and order, setting out the following critical condition it deemed necessary to the protection of § 40 concerns: "For the reasons stated more fully in the Final Decision of this date . . . the work proposed in the Notice of Intent and accompanying plans, as amended through this date, is prohibited. Nothing herein prohibits the filing of a new Notice of Intent provided that the Notice of Intent is supported by substantial evidence which shows

ten order . . . impose such conditions as will contribute to the protection of the interests described herein, and all work shall be done in accordance therewith."

The statute further provides that "any person aggrieved" by the commission's order "may . . . request [DEQE] to determine" the significance of the land to the interests quoted above; the Commissioner of DEQE may also make such request. Thereafter, DEQE "shall make the determination requested and shall by written order . . . impose such conditions as will contribute to the protection of the interests described herein . . . . Such order shall supersede the prior order of the conservation commission . . . and all work shall be done in accordance therewith . . . ."

that (1) any house would be constructed on pilings, (2) any subsurface sewage disposal system would comply with [310 Code Mass. Regs. § 15.01, et seq. (1978)], (3) there would be a lawful, dependable and environmentally sound source of adequate potable water, (4) no work would occur, and no equipment or vehicles would intrude, seaward of any point 20 feet landward of the mean high water mark, and (5) no revetment shall be constructed."

The essence of the plaintiff's complaint is that the commission's proceedings and the DEQE's final decision "deprive[ ] [her] of all economically reasonable benefits of her said premises, and said decision appropriates so many of its rights and uses as to constitute a taking thereof." The primary basis for the trial judge's dismissal of the action was that if a taking had occurred, the DEQE and not the defendant commission was the taking authority, and, therefore, the plaintiff had failed to state a claim against the defendants on which relief could be granted; secondly, he concluded that the complaint should be dismissed because the plaintiff had failed to seek judicial review of the DEQE's decision under G. L. c. 30A, § 14.

The question whether the DEQE's decision constitutes a taking of the plaintiff's land without compensation need not be decided on this appeal. We are required to determine only (1) whether the commission was a proper defendant in this action and (2) whether the plaintiff was required to seek judicial review of the DEQE's decision before commencing her action for a taking.[4]

---

[4] The parties have also briefed the issue whether the DEQE's decision and order constitutes a taking. The plaintiff argues that a house cannot be constructed on her land within the terms of the five conditions previously cited and that as a result she has been deprived of all practical value of the land, leaving her only with the burden of paying the taxes on it. See *Commissioner of Natural Resources* v. *S. Volpe & Co.*, 349 Mass. 104, 111 (1965); *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 641 (1970); *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 19-20 (1979). See also Note, Coastal Wetlands in New England, 52 B.U.L.Rev. 724, 752-762 (1972). The defendants contend that, if they are the taking authority, they have only restricted the plaintiff's use of her

1. *Liability for Takings Resulting from Proceedings Under G. L. c. 131, § 40.*

The plaintiff argues that the DEQE is not a necessary party to her action because "the character of the order of conditions, whether made by the commission or as modified, if at all, by DEQE remains local in nature and effect upon the parcel for which application was initially made." Because of the history and the express language of § 40, we do not agree with this contention.

The legislative history of § 40 demonstrates that the Legislature has always reserved to the Commonwealth, acting through its various agencies, the final decision on applications for projects affecting statutory concerns as to wetlands protection.[5]

Section 40 first appeared as G. L. c. 130, § 27A, inserted by St. 1963, c. 426, and pertained solely to coastal wetlands. By that enactment, the Legislature delegated to the local authorities acting upon work project applications the limited power to "recommend" such "measures as may protect the public interest."[6] The Department of Public Works was charged with the responsibility of enforcing the provisions of § 27A as they related to certain waterways, see G. L. c. 91, §§ 30 and 30A, and the Director of Marine Fisheries was vested with the authority to "impose such conditions on said proposed work as he may determine neces-

---

land through the exercise of their police power. See *Davidson* v. *Commonwealth,* 8 Mass. App. Ct. 541, 548-549 (1979), and authorities cited therein. This question remains for another day, because the issue before us is one of procedure: that is, if the plaintiff's allegations are true and there has been a taking, see note 2, *supra,* from whom may she seek compensation and when?

[5] Local authorities do have final power where they are acting pursuant to an ordinance or by-law which is consistent with the statute but which permissibly imposes "more stringent controls" than the minimum State-wide standards set by the Legislature. *Golden* v. *Selectmen of Falmouth,* 358 Mass. 519, 525-526 (1970).

[6] Section 27A was amended by St. 1969, c. 406, § 2, to require local authorities to forward copies of any recommendations made to the applicant, the Director of Marine Fisheries and the Department of Public Works.

sary to protect such shellfish or marine fisheries, and work shall be done subject thereto." See *Commissioner of Natural Resources* v. *S. Volpe & Co.*, 349 Mass. 104 (1965).[7] Under the statute the Department of Public Works held veto power over projects within its jurisdiction. *Golden* v. *Selectmen of Falmouth*, 358 Mass. 519, 525 (1970).

Comparable protection for inland wetlands was established by G. L. c. 131, § 117C, inserted by St. 1965, c. 220. When G. L. c. 131 was revised in its entirety by St. 1967, c. 802, § 1, this section became part of the new c. 131, § 40. Like G. L. c. 130, § 27A, c. 131, § 40, as appearing in St. 1967, c. 802, § 1, required that notice of work projects on inland wetlands which involved statutory concerns be filed with local authorities, which could "recommend such protective measures as may protect the public interest." However, the power to "impose such conditions as may be necessary to protect the interests described herein" was legislatively delegated to the Commissioner of Natural Resources. The statute retained final say in the Commonwealth by further providing that if the Commissioner imposed conditions on the proposed work, "the work shall be done in accordance therewith."

Local conservation commissions had been established by G. L. c. 40, § 8C, inserted by St. 1957, c. 223, § 1, "for the promotion and development of the natural resources and for the protection of watershed resources of said city or town" accepting the statute. Statute 1971, c. 1020, and St. 1972, c. 510, added conservation commissions to those local authorities described in c. 131, § 40, and c. 130, § 27A, respectively.

---

[7] In *Commissioner of Natural Resources* v. *S. Volpe & Co., supra,* the Commissioner sought to enjoin the defendant from performing work in violation of a condition imposed by the Director of Marine Fisheries under § 27A. The defendant challenged the condition on the basis of an allegation that it constituted an invalid taking. The court remanded the matter for further evidence and findings on questions relevant to whether the defendant was the uncompensated victim of a taking. *Id.* at 111-112. In so doing, the court did not consider any allocation of liability between State and local authorities but confined its discussion to the terms of the Commonwealth's liability.

The next amendment of G. L. c. 131, § 40, of any conse-
quence to our analysis was by St. 1972, c. 784, which made
§ 40 applicable to both coastal and inland wetlands and
repealed c. 130, § 27A.[8]  That amendment also gave local
authorities greater power by no longer restricting them to
the mere making of recommendations.  The local authori-
ties were given that which had been the exclusive function
of the Commonwealth, namely, the powers "to impose such
conditions as will contribute to the protection of the inter-
ests described herein" and to require that "all work shall be
done in accordance" with any conditions that they might
impose.  These powers have been construed as including "a
prerogative to prohibit construction" if necessary for the
protection of the statutory interests.  *Lovequist* v. *Conser-
vation Commn. of Dennis*, 379 Mass. 7, 15 (1979).  See 310
Code Mass. Regs. § 10.02(28) (1980).

The legislative delegation of power to the local authorities
did not, however, divest the Commonwealth of its right to
the final say on project applications decided on the basis of
those interests recited in § 40.  To the contrary, we read the
1972 amendment to § 40 as expressly reserving this right to
the Commonwealth, acting through the DEQE.[9]  Specifi-
cally, we look to that language in G. L. c. 131, § 40, which
provides that after a commission issues its decision, "the ap-
plicant, any person aggrieved by said commission's order
. . . or any owner of land abutting the land upon which the
proposed work is to be done, or any ten residents of the city
or town in which such land is located, may . . . request the
department of environmental quality engineering to deter-
mine" those identical concerns considered by the local au-

---

[8] Although § 40 has been amended on numerous occasions since 1972,
the pertinent provisions of the statute as set out in note 3, *supra*, were in
place at the time the plaintiff filed her notice of intent with the defendant
commission.

[9] General Laws c. 21A, §§ 1 and 7, were inserted by St. 1974, c. 806,
§ 1, to create the office of the Secretary of Environmental Affairs and the
DEQE, which was placed within that office.  The DEQE's functions in
relation to § 40 were established by St. 1975, c. 706, §§ 237 through 242.

thority. The importance of the State's interest in the local decision is evidenced in the provision that "[t]he commissioner of environmental quality engineering also may request such a determination." Moreover, the DEQE's determination and order "shall supersede the prior order of the conservation commission . . . and all work shall be done in accordance therewith."[10] The determination can include an order prohibiting the activity. 310 Code Mass. Regs. 10.06(3) (1980).

The Commonwealth's power to speak with finality on wetlands is manifested throughout the Legislature's comprehensive, protective regulation in this area.[11] The authority of local government in carrying out its role remains relatively circumscribed, and when acting under § 40 rather than an ordinance or by-law, a city or town must make its determination solely in accordance with the minimum crite-

---

[10] Among the usual and natural meanings of "supersede" as found in Webster's Third New International Dictionary 2295 (1971) are: "to make void," "to take the place of and outmode by superiority: supplant and make inferior by better or more efficiently serving a function." See also *County of Los Angeles* v. *Ferguson*, 94 Cal. App. 3d 549, 559 (1979); *People* v. *Schildhaus*, 15 Misc. 2d 377, 379 (N.Y. Ct. Spec. Sess. 1958).

[11] For a partial list of relevant statutes, see *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 523, 525 n.2 (1976). For a general overview of the legislation protecting wetlands, see McGregor & Dawson, Wetlands and Floodplain Protection, 64 Mass. L. Rev. 73 (1979). We note that the statutory scheme provides not only for case by case review of the proposals for development of wetlands, as in G. L. c. 131, § 40, but also for prospective designation and regulation of areas to be protected. See G. L. c. 130, § 105 (coastal wetlands); G. L. c. 131, § 40A (inland wetlands); G. L. c. 21, § 71B (scenic and recreational rivers). See also G. L. c. 131, § 39A (watersheds in Berkshire mountain regions), which provides for both prospective and case by case regulation.

In addition, we note that at least a dozen other States have adopted statutes which protect wetlands by one or both of these approaches. For a review of this legislation, see 6A Nichols, Eminent Domain § 33.5(1)(a)(ii) (rev. 3d ed. 1980). Several of these statutes are analogous to G. L. c. 131, § 40, providing a two-tier procedure in which applications may be reviewed by both local and State authorities. See Me. Rev. Stat., tit. 38, §§ 471-478 (1978 & Supp. 1980); N.C. Gen. Stat. §§ 113A-116 — 113A-128 (1978 & Supp. 1979); N.Y. Envir. Conserv. Law, art. 24, tits. 1, 5, 7, 11 (McKinney Supp. 1980); Va. Code §§ 62.1-13.1 — 62.1-13.20 (1973 & Supp. 1981).

ria therein recited. When acting under a by-law or ordinance, a local authority may regulate more strictly, but only in a fashion consistent with the statute. See *Golden* v. *Selectmen of Falmouth*, 358 Mass. at 526; *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. at 15. Thus, where a local authority disapproves a proposed project pursuant to a by-law or ordinance which provides greater protection than § 40, the applicant has no right to seek DEQE approval of the project on the basis that it would be acceptable under the statute. Rather, the applicant pursues those usual remedies available to one aggrieved by a decision of a local authority. See, e.g., *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635 (1970); *Golden* v. *Selectmen of Falmouth*, 358 Mass. at 520-521; *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. at 15-16. Where, however, the local authority approves or disapproves an application under § 40, the Commonwealth, through the DEQE, has the final word.

Given these limitations on local authorities, it is apparent that the Legislature has assigned to local authorities acting under § 40 the role of making an initial review of an application for the familiar purposes of bringing local knowledge to bear on local conditions and reducing the administrative burden on a Statewide agency. Cf. *Higginson* v. *Treasurer & Sch. House Commrs. of Boston*, 212 Mass. 583, 584-585 (1912); *Burnham* v. *Board of Appeals of Gloucester*, 333 Mass. 114, 117 (1955). See generally Note, Coastal Wetlands in New England, 52 B.U.L. Rev. 724, 739-741 (1972). It may fairly and succinctly be said that when a local authority acts under § 40, it does so as an "arm of the Commonwealth," *Higginson* v. *Treasurer & Sch. House Commrs. of Boston*, 212 Mass. at 585.

We conclude that § 40 reserves to the DEQE the power to make the final decision on applications involving the specified concerns and to preserve thereby the Statewide interest in the protection of our wetlands. See Dawson, Protecting Massachusetts Wetlands, 12 Suffolk U.L. Rev. 755, 779 (1978). See also *State* v. *Johnson*, 265 A.2d 711, 716 (Me. 1970); *Monroe* v. *Carey*, 96 Misc. 2d 238, 242-243

(Sup. Ct. 1977), aff'd, 46 N.Y. 2d 847 (1979). When § 40 authority is exercised by the DEQE to prohibit a proposed project for purposes of protecting State interests, the DEQE, therefore, in the name of the Commonwealth,[12] is the party which would bear the liability for any taking which results,[13] cf. *Westport* v. *County Commrs. of Bristol*, 9 Allen 203 (1864); *Flagg* v. *Bradford*, 181 Mass. 315, 316 (1902), just as any other party who works a taking would be liable. See *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. at 641, and authorities therein cited. See also Note, Coastal Wetlands in New England, 52 B.U.L. Rev. 724, 752-762 (1972).

Our conclusion should not be construed as a signal to local communities to refrain from enacting strict wetland protection ordinances or by-laws in order to avoid liability for resulting takings. Cities and towns have clearly defined

---

[12] The DEQE has the power to acquire real property by eminent domain, subject to appropriation, see G. L. c. 21A, §§ 2(7), 2(8), and 2(26), inserted by St. 1974, c. 806, § 1, and it may be named as a defendant in an action for a taking. See and compare *Perkins Sch. for the Blind* v. *Rate Setting Commn.*, 383 Mass. 825, 827-830 (1981) , with *Sargeant* v. *Commissioner of Pub. Welfare*, 383 Mass. 808, 820 (1981). To contrast the power of a conservation commission relative to acquiring realty by eminent domain, see *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. at 641-642 n.3; *Dedham* v. *Gobbi*, 6 Mass. App. Ct. 883 (1978); G. L. c. 40, § 5(51), as amended by St. 1966, c. 108.

[13] All three of the Massachusetts statutes which regulate wetlands use on a prospective, rather than a case by case, basis, see note 11, *supra*, set out detailed and nearly identical procedures for determining claims of a taking by reason of the imposition of wetlands protective measures. G. L. c. 130, § 105. G. L. c. 131, § 40A. G. L. c. 21, § 17B. These statutes provide that any landowner affected by a prospective order adopted by the Department of Environmental Management may petition the Superior Court to determine whether such prospective order constitutes a taking. If the court determines that it does, the petitioner is entitled to a finding that his land shall be exempt from that prospective order. The statutes further provide that this exemption proceeding is the "exclusive" method by which the taking allegation is to be raised and decided, and "such issue shall not be determined in any other proceeding, nor shall any person have a right to petition for the assessment of damages under chapter seventy-nine by reason of the adoption of any such order." Should the order be found to constitute a taking and the land therefore exempted from its application, the Department may then take the land in the name of the Commonwealth by eminent domain.

options available to them by reason of the fact that § 40 "sets forth minimum standards only, 'leaving local communities free to adopt more stringent controls.' *Golden* v. *Selectmen of Falmouth,* 358 Mass. [at] 526." *Lovequist* v. *Conservation Commn. of Dennis,* 379 Mass. at 15. Consequently, "[i]f the [local authority] intends and desires to preserve its remaining undeveloped coastal or inland wetlands in their natural, unspoiled condition for the enjoyment and benefit of the public, there are ways by which it may lawfully accomplish the purpose." *MacGibbon* v. *Board of Appeals of Duxbury,* 356 Mass. at 641. And where a taking is caused by the accomplishment of that purpose, it is the local authority which would bear the liability. It would, however, be anomalous to impose liability on the local authority where it has not elected or cannot afford to give priority to ecological concerns and has instead chosen to leave its coastal and inland wetlands to those protections extended by the Statewide standards set out in § 40.

Accordingly, we hold that where the DEQE decides with finality that conditions are required by the minimum statutory standards and imposes them by a superseding order, it and not the local authority is liable for any taking which may thereby occur. The plaintiff, therefore, failed to state a claim upon which relief could be granted against the town or its conservation commission. Cf. *Mitchell* v. *Metropolitan Dist. Commn.,* 4 Mass. App. Ct. 484, 487-489 (1976).

2. *The Effect of the Plaintiff's Failure to Name the DE-QE as a Defendant.*

In dismissing the action "without prejudice," the trial judge apparently intended that the plaintiff would be at liberty to reinstitute her action and name the DEQE as the defendant after seeking judicial review of the DEQE's order under G. L. c. 30A, § 14. Because we agree with the plaintiff's contention that she was not required to seek judicial review (see part 3 of this opinion, *infra*), we consider next whether the action should have been dismissed for "failure to join a party under Rule 19," as allowed by rule 12(b)(7).

The plaintiff argues that if the DEQE is a necessary party, she should be allowed to amend her complaint because Mass.R.Civ.P. 21, 365 Mass. 767 (1974), expressly provides that "[m]isjoinder of parties is not ground for dismissal of an action." Moreover, our procedural rules have been liberally interpreted and applied in favor of saving actions by allowing amendments. See *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 289 (1977); *Perkins Sch. for the Blind* v. *Rate Setting Commn.*, 383 Mass. 825, 829-830 (1981). The problem in the present instance, however, is that the plaintiff's complaint is defective because of her failure to name as a defendant an indispensable party, as described in Mass.R.Civ.P. 19, 365 Mass. 765 (1974).

Rule 19(a) provides, in relevant part, that "[a] person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties." Further, rule 19(b) states that "[i]f a person as described in subdivision (a)(1) . . . hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." The difference between misjoinder and the failure to join an indispensable party, nonjoinder, has been discussed in relation to the cognate provisions of Fed.R.Civ.P. 19 and 21: "Although Rule 21 applies to nonjoinder, the first sentence of the rule, which prohibits dismissal of the action, refers only to misjoinder and makes no reference to a failure to join a party. The sentence was worded in this fashion to avoid conflict with the provision in Rule 19 authorizing the dismissal of the action when 'in equity and good conscience' the action cannot proceed in the absence of one or more persons. However, the failure to join someone whose presence is desirable but not indispensable is not a ground for dismissal of the action under Rule 21. But when the absentee is regarded as indispensable under Rule 19(b), dismissal will be necessary. The court generally will afford plaintiff every opportunity to add the absentee to the suit before it will

order dismissal of the action." 7 Wright & Miller, Federal Practice and Procedure § 1684, at 329-330, and see § 1686, and cases cited at n.61 (1972). See Smith & Zobel, Rules Practice §§ 21.2 and 21.3 (1975). See also *United States* v. *Swink,* 41 F. Supp. 98 101 (E.D. Va. 1941) ("Rule 21 was not adopted to give relief to a plaintiff who sues the wrong party, but to a plaintiff who sues too many parties, or not enough parties").

Although the trial judge could have afforded the plaintiff an opportunity to amend her complaint by adding the DEQE as a party before dismissing the action as to the present defendants, he did not do so, presumably because he also ruled that the complaint had to be dismissed for the plaintiff's failure to seek judicial review under G. L. c. 30A, § 14. We need not consider, however, whether the plaintiff should be allowed to amend her complaint since the final order of the DEQE was issued on February 14, 1980, and an action against the DEQE is not yet barred by the two-year statute of limitations. See G. L. c. 79, §§ 16 and 18. In the circumstances of this case, we think it appropriate that the plaintiff proceed against the DEQE by pleading afresh rather than by amendment.

3. *The Effect of the Plaintiff's Failure to Bring an Action Under G. L. c. 30A, § 14.*

The trial judge correctly ruled that the DEQE's decision was final within the meaning of G. L. c. 30A, § 14. See *J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 539-541 (1976); *Assuncao's Case,* 372 Mass. 6, 8-9 (1977); *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.,* 376 Mass. 359, 370 (1978). He concluded, however, that the plaintiff's action should be dismissed nonetheless because she "has not exhausted the remedies for judicial review pursuant to G. L. c. 30A, § 14." This ruling implies that a complaint for judicial review was the exclusive remedy available to the plaintiff following the DEQE order. Were the plaintiff challenging the correctness of the DEQE decision, we would agree with the trial judge. In commencing her suit for damages for a taking, however, the

plaintiff accepted the correctness of the DEQE decision. Indeed, she states in her brief that "ample evidence was introduced to warrant the action taken by the DEQE, and that no procedural or other error was committed." See G. L. c. 30A, § 14(7)(*b*) - (*g*).

The defendants advance two theories in urging that the plaintiff cannot proceed with her present action because she did not first seek judicial review of the DEQE's order. Their first contention is that an action for judicial review would have afforded the Superior Court "the opportunity to evaluate the correctness of the DEQE's decision, and to make a determination under § 14(7) as to the validity of the agency's action." However, the Superior Court is not the last level of the administrative system, and it reviews agency decisions only when asked to do so by a person statutorily entitled to make such a request, i.e., one who is "aggrieved by a final decision of any agency in an adjudicatory proceeding." G. L. c. 30A, § 14, as appearing in St. 1973, c. 1114, § 3.

The defendants' second assertion is that review of a claim of a taking without just compensation by reason of agency action is available under § 14(7)(*a*).[14] Under that provision, they argue, a Superior Court judge could determine that the agency decision constitutes a taking without just compensation and set it aside or direct the plaintiff to bring an action for a taking. We do not agree that the Superior Court has the power under § 14(7)(*a*) to set aside the DEQE's decision on the sole ground that the conditions thereby imposed under G. L. c. 131, § 40, have resulted in a taking. Section 40, unlike G. L. c. 130, § 105, G. L. c. 131, § 40A, and G. L. c. 21, § 17B, does not empower the Superior Court to exempt the land in question from conditions that the DEQE is mandated to impose under its provisions, leaving the

---

[14] To the extent applicable, § 14(7)(*a*) provides: "[T]he court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is — (a) In violation of constitutional provisions."

DEQE with the right to take the land by eminent domain should it choose to enforce the conditions irrespective of the exemption. See note 13, *supra.*

The defendants would thus have us put the plaintiff to an action for judicial review for the limited purpose of determining whether the conditions imposed by the DEQE amount to a taking, and if the judge concluded in her favor, he would then direct her to bring an action for damages for that taking. By accepting the correctness of the DEQE decision and not challenging the validity of the taking, see *Barnes* v. *Springfield,* 268 Mass. 497, 503 (1929), cert. denied, 281 U.S. 732 (1930); *Opinion of the Justices,* 360 Mass. 894, 900 (1971), the plaintiff seeks to obtain complete relief in one proceeding, rather than two, and in this single proceeding the DEQE is free to raise the defense that the imposed conditions do not rise to the level of a taking. See, e.g., *Tassinari* v. *Massachusetts Turnpike Authy.,* 347 Mass. 222 (1964); *Davidson* v. *Commonwealth,* 8 Mass. App. Ct. 541 (1979).

Additionally, there is nothing in § 40 which requires us to view § 14 as the plaintiff's exclusive remedy. Contrast G. L. c. 131, § 39A, inserted by St. 1974, c. 842, § 1 ("Any person aggrieved by an order of the department issued under the provisions of this section may appeal under the provisions of chapter thirty A. Such right of appeal shall be exclusive." During the same legislative session that the quoted provision was enacted as part of § 39A, an identical provision in c. 131, § 40, was deleted by St. 1974, c. 818, § 1). There is no reason why the plaintiff should not be allowed to proceed by the most thorough and expeditious means available to her, and the trial judge erred in concluding that she was required to seek judicial relief under G. L. c. 30A, § 14, before she could maintain her action for damages for an alleged taking.

4. *The Right to Submit Future Proposals as Affecting the Plaintiff's Claim of a Taking.*

As earlier noted, the DEQE's decision provided that the plaintiff could file a new notice of intent so long as it complied with the recited conditions. But, it is on the basis of

those conditions, see note 4, *supra,* that the plaintiff argues that no construction can take place on her land. The trial judge noted in his memorandum of decision that, because the plaintiff could file new construction proposals, "it does not appear that [she] has yet reached the point where it must be said that, in effect, a taking of the land has been made." To the extent that that statement can be viewed as an additional basis for the judge's dismissal of the action under rule 12(b)(6), we deem it necessary to reach the issue because, under our earlier conclusion, the plaintiff is free to bring an action against the DEQE.

There is nothing to suggest that in the absence of this statement by the DEQE, the plaintiff could not submit new proposals. See 310 Code Mass. Regs. §§ 10.03, 10.05, and 10.06 (1980). Moreover, an administrative agency cannot foreclose an applicant from relying on an agency decision by inserting in its otherwise final order a provision like the one at issue here to require the applicant to submit yet another proposal as a precondition to an action in court. Since the essence of the plaintiff's complaint is that the conditions have the effect of precluding her from filing any future proposals, it would be error to dismiss the complaint under rule 12(b)(6) on such a basis without first determining the correctness of her assertion. The question of what future proposals might be held permissible by the DEQE under the conditions established by it goes to the very merits of the plaintiff's claim, i.e., whether those conditions deprive her of all "practical uses" of her land. *Commissioner of Natural Resources* v. *S. Volpe & Co.,* 349 Mass. at 107.

5. *Conclusion*

Because the plaintiff's complaint does not state a claim upon which relief can be granted against the named defendants, the action was properly dismissed.

*Judgment affirmed.*