Gants, J.
Y&M Trust (“the Trust”) owns a tract of roughly 17 acres of undeveloped land adjacent to Route 2 in Arlington (“the Site”). The Trust’s representative, Finard & Company, LLC (“Finard”), on July 11, 2000 filed with the defendant Town of Arlington Conservation Commission (“the Commission”) a Wetland Protection Form 4A, Abbreviated Notice of Resource Area Delineation (“ANRAD”), essentially seeking a determination from the Commission as to which portions of the Site are within the regulatory jurisdiction of the Massachusetts Department of Environmental Protection (“DEP”) and/or the Commission. After public hearings, the Commission, in a decision dated July 30, 2001, determined that the delineation of wetlands by Finard was accurate but that its delineation of the flood plain level was inaccurate. As discussed at the hearing before this Court, the practical consequence of this determination is that the Trust cannot develop the Site until it returns to the Commission with a new ANRAD that includes a delineation of the boundaries of the flood plain that the Commission finds to be accurate.
Finard, on behalf of the Trust, has brought this certiorari action under G.L.c. 249, §4 seeking relief from the Commission’s finding that the flood plain delineation was inaccurate. After hearing, for the reasons stated below, Finard’s motion for judgment on the pleadings is DENIED and the Commission’s motion for judgment on the pleadings is ALLOWED.
DISCUSSION
In determining the boundaries of the wetlands and flood plain on the Site, the Commission essentially is determining which portions of the Site fall within the regulatory jurisdiction of the DEP and the Commission under the Massachusetts Wetlands Protection Act, G.L.c. 131, §40 (“the Act”) and the Town of Arlington Bylaw for Wetlands Protection, Title V, Article 8 (“the Bylaw”).[1]
Among the prohibitions under the Act, “[n]o person shall remove, fill, dredge or alter any land subject to . . . flooding . . . without filing written notice of his intention to so remove, fill, dredge or alter, . . . and without receiving and complying with an order of conditions . . .” G.L.c. 131, §40. Under the DEP regulations established to implement the Act, a definition is provided as to “land subject to flooding”:
The boundary of Bordering Land Subject to Flooding is the estimated maximum lateral extent of flood water which will theoretically result from the statistical 100-year frequency storm. Said boundary shall be that determined by reference to the most recently available flood profile data prepared for the community within which the work is proposed under the National Flood Insurance Program (NFIP, currently administered by the Federal Emergency Management Agency (“FEMA"], successor to the U.S. Department of Housing and Urban Development). Said boundary, so determined, shall be pre *255 sumed accurate. This presumption may be overcome only by credible evidence from a registered professional engineer or other professional competent in such matters. 310 CMR §10.57(2)(a)(3). Therefore, as a result of this regulation, in determining whether land is “bordering land subject to flooding” and therefore within the scope of the Act, the Commission must presume that the so-called FEMA Map is accurate in its delineation of the boundaries of “bordering land subject to flooding” and that presumption may be overcome only if credible evidence is offered “from a registered professional engineer or other professional competent in such matters.”
The Act “sets forth minimum standards only, ‘leaving local communities free to adopt more stringent controls.’ ” Loveguist v. Conservation Commission of Dennis, 379 Mass. 7, 15 (1979), quoting Golden v. Selectmen of Falmouth, 358 Mass. 519, 526 (1970). The Town of Arlington Bylaw, among its prohibitions, bars any person from removing, filling, dredging, building upon, or altering “any land bordering [said waters] as hereinafter defined, or any land subject to flooding or inundation” without first filing written notice of his intention to remove, fill, dredge, build upon, or alter, and receiving a permit to do so issued by the Commission. Bylaw, Article 8, §1. The Bylaw does not define “land subject to flooding or inundation.” It does, however, define “bordering” and thereby defines the boundaries of “land bordering [said waters]” that fall within the scope of the Bylaw. Under the Bylaw:
“Bordering” shall be defined to include any land within either of the following or the greater thereof:
1. 100 feet horizontally lateral from the edge of any bog, marsh, wetmeadow or swamp which borders on a creek, brook, river, stream, pond, lake or wetland,
2. within the maximum lateral extent of the water elevation of the statistical 100-year frequency storm.
Bylaw, Article 8, §10(F). With this second definition of “bordering,” the Bylaw essentially defines “land subject to flooding or inundation,” but places it within the definition of “bordering.”
Unlike the regulations of the Act, the Bylaw does not impose upon the Commission any presumption it must employ in determining the boundaries of “within the maximum lateral extent of the water elevation of the statistical 100-year frequency storm.” Therefore, while the Commission must presume that the so-called FEMA Map is accurate in its delineation of these boundaries in determining whether land falls within the scope of the Act, it is not required to use any presumption in determining whether land falls within the scope of the Bylaw. Rather, the Bylaw simply places the burden of proving those boundaries on the owner of the land by a preponderance of the evidence, and does not set forth any standard as to how the Commission is to evaluate the evidence presented. Bylaw, Article 8, §9.
Finard contends that the Commission committed an error of law by not interpreting its Bylaw to impose this same presumption favoring the FEMA Map on the definition of land “within the maximum lateral extent of the water elevation of the statistical 100-year frequency storm.” This Court does not agree. Since the Town of Arlington, like any Massachusetts town or city, is free to impose more stringent controls on wetland and flood plain development than the Act, it is also free to determine how it will define the boundaries of the flood plain and what, if any, presumptions it will employ in determining those boundaries.
Nor does this Court find that the Commission was arbitrary or capricious or abused its discretion in choosing not to give the FEMA Map the benefit of such a presumption. See Caswell v. Licensing Commission for Brockton, 387 Mass. 864, 878 (1983); Police Commissioner of Boston v. Personnel Administrator, 39 Mass.App.Ct. 360, 363 (1995) (“Where an agency has been granted broad, discretionary authority, the standard of review is error of law or abuse of discretion, measured by the arbitrary and capricious test”). The Commission, in its decision, articulated rational reasons why the FEMA Map, which was prepared in 1982, may no longer accurately measure the flood plain level, noting the subsequent studies that cast doubt on the 1982 FEMA conclusions, the additional development in the watershed area that has occurred since 1982, and the apparent increase in rainfall levels in the northeastern United States. This Court cannot find that the Commission abused its discretion or was arbitrary or capricious in finding that Finard, on behalf of the Trust, had failed to meet its burden of establishing by a preponderance of the evidence, for purposes of the Town Bylaw, accurate boundaries for the flood plain on the Site. For this reason, this Court will not vacate or remand the Commission’s decision.[2]
ORDER
For the reasons stated above, Finard’s motion for judgment on the pleadings is DENIED and the Commission’s motion for judgment on the pleadings is ALLOWED.

The Town of Arlington revised this Bylaw and made the revised Bylaw effective in October 2000, before the Commission’s decision was rendered. However, there is no dispute that the Bylaw in effect on July 11, 2000, when Finard filed its ANRAD, is the Bylaw that must govern the Commission’s determination.

While this Court essentially affirms the Commission’s decision, this Court is mindful that:
without any constraints regarding the Commission’s review of the evidence,
without the need to itself determine the accurate flood plain boundaries, and *256 with the burden of proving the accurate flood plain bound - aries placed on the owner of the property,
there is the potential danger that the Commission could in bad faith deny a property owner the opportunity to develop its property simply by deciding that the owner had failed to meet its burden of accurately delineating the boundaries of the flood plain. While this Court certainly does not find that the Commission acted in bad faith as to Finard’s July 11, 2000 application, this Court does hope that the Commission, once Finard files its anticipated new ANRAD, will provide guidance as to what evidence will be needed to permit the Commission to conclude that Finard has met its burden of accurately delineating the flood plain on the Site.