Joseph DeGrace & another[1] vs. Conservation
Commission of Harwich.

No. 89-P-1339.

Barnstable. February 11, 1991. - July 29, 1991.

Present: Brown, Gillerman, & Laurence, JJ.

*Wetlands Protection Act. Municipal Corporations*, Conservation commission, By-laws and ordinances. *Department of Environmental Protection. Harwich.*

An appeal to a District Court pursuant to St. 1981, c. 569, from an order of the conservation commission of Harwich denying approval of a project became moot upon the issuance of a superseding order, approving the project with conditions, issued by the Department of Environmental Quality Engineering pursuant to G. L. c. 131, § 40, thirteenth par., in circumstances where the commission was not acting pursuant to any ordinance or by-law that provided greater protection than § 40. [135-136]

Civil action commenced in the Barnstable Division of the District Court Department on August 1, 1985.

The case was heard by *Robert A. Welsh, Jr.*, J.

*Gary V. Nichols* for the plaintiffs.

*James M. Falla*, Town Counsel, for the defendant.

Brown, J. The plaintiffs, who are husband and wife, purchased a lot in the town of Harwich in the early 1970's with the intention of building their retirement home there when Joseph retired. In 1984, Joseph did retire and retained an engineering firm to design a house for the lot. A notice of intent to construct a dwelling was filed by the plaintiffs with the conservation commission of Harwich (commission), as required under the Wetlands Protection Act, G. L. c. 131, § 40

---

[1]Sophie DeGrace

(act).[2] This petition sought commission approval for construction of a two-bedroom house, gravel driveway, and subsurface septic system. Plans for the proposed septic system were also submitted for approval. On June 26, 1987, the commission entered an order denying approval of the project on grounds that it involves the "filling of wetland" and that the proposed "septic system fails to meet the standards of the [Harwich] Board of Health."

1. *The wetlands issue.* Two avenues of appeal are available to applicants aggrieved by an order of the Harwich conservation commission: the first, under G. L. c. 131, § 40, thirteenth par.,[3] is to the Department of Environmental Quality Engineering (DEQE)[4]; the second, under St. 1981, c. 569, and a Harwich by-law (§ 9-108), is to the District Court.[5]

---

[2] The purpose of the Wetlands Protection Act, G. L. c. 131, § 40, and the regulations promulgated thereunder, is to protect wetlands from destructive intrusion, and all use of "properly denominated wetlands" is barred or limited to activities compatible with the wetlands. *Southern New England Conference Assn. of Seventh-Day Adventists* v. *Burlington,* 21 Mass. App. Ct. 701, 706 (1986). The act established "a comprehensive scheme of administrative action and remedies with local authorities, i.e., conservation commissions, making the initial review [of restrictions on an owner's use of wetlands] 'for the familiar purposes of bringing local knowledge to bear on local conditions and reducing the administrative burden on [the DEQE.]' " *Department of Envtl. Quality Engr.* v. *Cumberland Farms of Conn., Inc.,* 18 Mass. App. Ct. 672, 675-676 (1984), quoting from *Hamilton* v. *Conservation Commn. of Orleans,* 12 Mass. App. Ct. 359, 368 (1981).

[3] General Laws c. 131, § 40, thirteenth par., as appearing in St. 1986, c. 262, § 1, provides in pertinent part that "where an order . . . issue[s] from [a conservation] commission, the applicant . . . may . . . request the department of environmental quality engineering to determine whether the area on which the proposed work is to be done is significant to public or private water supply . . . . Upon receipt of such request the department shall make the determination requested and shall by written order . . . impose such conditions as will contribute to the protection of the interests described herein . . . . Such order shall supersede the prior order of the conservation commission . . . and all work shall be done in accordance therewith . . . ."

[4] Now the Department of Environmental Protection.

[5] The language of St. 1981, c. 569, and the by-law appear to have been copied from the language of G. L. c. 131, § 40, thirteenth par., with the significant difference being the substitution of the District Court for the DEQE. They also provide that "[t]he court shall hear all evidence perti-

When the plaintiffs' petition to build their house and driveway was denied by the commission, they appealed to both the DEQE and the District Court.

On September 9, 1988, the DEQE issued a superseding order which approved the project subject to certain conditions. According to the DEQE, the areas in question are not "Areas Subject to Protection Under the Act" as that term is defined in its regulations. The commission had concluded that the two areas were connected and that "there is groundwater movement between ponds." The DEQE, on the other hand, determined that the two "isolated" depressions are too small to be regulated as "Isolated Land Subject to Flooding."

As noted, the plaintiffs also filed an action in the District Court challenging the commission's order of conditions which imposed a ban on construction, pursuant to St. 1981, c. 569, § 1. A trial de novo was held on various dates. On June 29, 1989, the judge issued findings, rulings and order for judgment and affirmed the decision of the commission. The judge found that the DEQE's determination that neither of the two areas is "connected as far as surface topography is concerned does not compel the conclusion that they are 'isolated,' " He also concluded that the commission is not required to accept or be bound by the determination . . . [of] the DEQE" and that the commission "is entitled to impose more stringent standards than those utilized by the DEQE, [and thus include] any subterranean connection between the two areas and larger bodies of water in the area."[6]

---

nent to the authority and findings of [the commission] and determine the facts, and, upon the facts so determined, annul such decision if found to exceed the authority of [the commission.]" Nothing in St. 1981, c. 569, or the by-law limits the right of any appeal to the DEQE.

[6]Section 9-103 of the town's by-law provides in pertinent part that "[t]he Commission shall make the determination as to whether or not this by-law applies to a specific situation prior to the filing of a written notice of intent. . . ." Section 9-104 of the by-law provides that the commission "is empowered to deny permission for any removal, drédging, filling or altering of subject lands within the town, if in its judgment, such denial is necessary to fulfill the purposes of this by-law . . . ."

The parties appear to have assumed that the District Court judge was to determine whether the ruling of the commission or the ruling of the DEQE would stand. This was error: the District Court judge had no power to disturb the ruling of the DEQE. Any appeal from the order of the DEQE would have to have been made pursuant to G. L. c. 30A, § 14. (None was taken.)

· "The legislative history of [G. L. c. 131, § 40] demonstrates that the Legislature has always reserved to the Commonwealth, acting through its various agencies, the final decision on applications for projects affecting statutory concerns as to wetlands protection." *Hamilton* v. *Conservation Commn. of Orleans*, 12 Mass. App. Ct. 359, 364 (1981). The language of the act itself lends support to this position. It specifically states that "any person aggrieved" by an order of the commission may request the DEQE to review those concerns considered by the commission, and the DEQE's determination and order shall "supersede the prior order of the conservation commission . . . and all work shall be done in accordance therewith."

The amendments to the act lend further support. Statute 1972, c. 784, amended the act and gave local authorities the power to "impose such conditions as will contribute to the protection of the [wetland values] described [in the act]" and to require that "all work shall be done in accordance" with any conditions that they might impose. Notwithstanding this legislative delegation of power to the local authorities, the 1972 amendment did not, however, "divest the Commonwealth of its right to the final say on project applications decided on the basis of those interests recited in § 40." *Hamilton* v. *Conservation Commn. of Orleans*, 12 Mass. App. Ct. at 366. Rather, the amendment expressly reserves this right to the Commonwealth, acting through the DEQE.

Local authorities do have final power, however, where they are acting pursuant to an ordinance or by-law which is consistent with the act, but which permissibly imposes "more stringent controls" than the minimum Statewide standards set by the Legislature. See *Golden* v. *Selectmen of Fal-*

*mouth*, 358 Mass. 519, 525-526 (1970). "Thus, where a local authority disapproves a proposed project pursuant to a by-law or ordinance which provides greater protection than § 40, the applicant has no right to seek DEQE approval of the project on the basis that it would be acceptable under the statute. . . . Where, however, the local authority approves or disapproves an application under § 40, the Commonwealth, through the DEQE, has the final word." *Hamilton* v. *Conservation Commn. of Orleans*, 12 Mass. App. Ct. at 368.

Here, the commission's denial of the plaintiffs' application for construction was not based on a by-law "which provides greater protection than § 40." *Hamilton, supra* at 368. Rather, the town's by-law specifically adopts and incorporates by reference the definition section of the act. In so doing, the town necessarily adopted and incorporated the definition section of the regulations promulgated by the Commonwealth pursuant to the act. Since the town chose not to impose "more stringent controls" than those set by the Legislature concerning those areas which are subject to wetland protection, it follows that the DEQE had the authority to issue a superseding order.

We conclude that, once the DEQE issued its superseding order, the appeal from the commission's order to the District Court was moot, and the District Court judge should have dismissed the case before him.[7] Principles of judicial economy also support our decision; we cannot condone a procedure which would allow two separate avenues of appeal. Cf. *Boston* v. *Board of Educ.*, 392 Mass. 788, 792 (1984) (allegedly inconsistent statutes are construed to give reasonable effect to both and to create a consistent body of law).

2. *The septic system.* The DEQE found that "[n]one of the components of the septic system are located within a wet-

---

[7]Because of the posture of this case, it has not been necessary to decide the extent or character of the District Court judge's review of the commission's order. It may be, however, that that review is not as extensive as that of the DEQE: clearly, the DEQE has the authority and expertise to decide issues of a particular project's "effect on the environment" under G. L. c. 131, § 40; the review in the District Court appears to be more limited. See note 5, *supra*.

land resource area" and that the system is beyond the juris-
diction of the Wetlands Protection Act. The order of condi-
tions issued by the DEQE requires, however, that prior to
construction a valid board of health permit be obtained. Ob-
viously, that hurdle still remains for the plaintiffs.[8]

The judgment of the District Court is vacated, and an or-
der is to be entered dismissing the complaint.

*So ordered.*

---

[8]From a decision by the board of health, "the applicant pursues those
usual remedies to one aggrieved by a decision of a local authority." *Hamil-
ton* v. *Conservation Commn. of Orleans*, 12 Mass. App. Ct. at 368.