Connon, J.
The plaintiff, Peter Eustis, brings this action pursuant to G.L.c. 249, §4 to appeal the decision of the Conservation Commission of the Town of Bourne (Commission), who refused to grant Eustis permission to extend and maintain a breakwater on his property. On July 25, 1994, the court heard this case. After reviewing the administrative record, and hearing the testimony of the witnesses, the Commission’s decision is affirmed.
FINDINGS OF FACT
1. Eustis owns the property located at 668 Scraggy Neck Road, Cataumet, Bourne, Massachusetts. The property is bounded to the southwest by Megansett Harbor, which is part of Buzzards Bay.
2. The property’s shoreline is currently protected by two stone groins (jetties) extending 80 to 90 feet into the harbor. These jetties currently intercept and trap latteraly moving sediment moving in the direction of adjacent shellfish flats.
3. In 1992, Eustis decided to extend the breakwater facing the harbor in order to provide extra protection to his home during storms. Eustis’s home is approximately 40-45 feet from the edge of the coastal erosion.
4. On March 23, 1992, Eustis submitted a Notice of Intent to the Commission, as required by G.L.c. 131, §40 and the Bourne Wetlands Protection By-Law 3.7 (by-law), seeking a building permit for the project.
5 The area of proposed construction on Eustis’s property falls within two wetlands resource areas — a coastal beach and a coastal dune. The activity is also *217 within several tidal velocity zones and within the buffer of land containing abundant shellfish.
6. Under Eustis’s proposed construction plan, lárge stones on the beach would be removed and utilized in extending the breakwater.
7. Eustis’s construction plan also proposes to create “gaps” throughout the breakwater so waters may run seaward and not pool on the upland side of the breakwater. Eustis’s site plan, however, fails to indicate any “gaps” in the breakwater.
8. Eustis’s plan seeks to bring in stone and sand fill to construct the breakwater.
9. The Notice of Intent Eustis submitted requires an applicant to accurately describe the manner in which the proposed project will meet the performance standards in 310 Mass. Code. Reg. 10.00 et seq. and to describe why the presumptions set forth under each resource area[2] in the regulations do not apply to the project.
10. On June 8, 1992, the Commission denied Eustis’s request. The Commission denied Eustis’s project for the following reasons:
1. Eustis failed to document that further armoring of this area will not create a negative impact on the benthic community.
2. The property is currently heavily armored by groins and large boulders that trap and deny sediment to the shellfish flats within the buffer and down coast. These structures provide significant protection to the applicant’s property.
3. The proposal will place rocks and fill in an area that contains some vegetation, eliminating the ability of the natural occunring vegetation to be re-established.
4. The placement of a bulkhead upon a coastal dune or beach to contain fill is prohibited.
5. The project does not meet the performance standards for a project such as this upon coastal dunes and beaches.
6. Eustis failed to document the potential negative impact to the adjacent benthic community from the construction of the bulkhead.
7. The negative impacts from altering a coastal wetland have not been documented to the satisfaction of the Commission.
8. The proposed structure poses unacceptable direct threats to the shellfishery and its habitat.
11. On August 13, 1993, the Department of Environmental Protection (DEP) issued a Superseding Order of Conditions.
RULINGS OF LAW
General Laws c. 249, §4 permits an aggrieved party to bring an action in Superior Court to correct errors in proceedings which are not otherwise reviewable by motion or by appeal. Cepulonis v. Commissioner of Correction, 15 Mass.App.Ct. 292, 293 (1983). In a certiorari review the court may correct errors of law committed by a judicial or quasijudicial tribunal that are so substantial and material that, if allowed to stand, would result in manifest injustice to the petitioner who is without any other available remedy.[3] Johnson Products, Inc. v. City Council of Medford, 353 Mass. 540, 541 (1968).
In the case at bar, Eustis contends that the DEP's Superseding Order renders the Commission’s decision moot. Additionally, Eustis asserts that if the Commission’s decision denying his application is not moot, the decision is not supported by substantial evidence.
I. Does the DEP’s Superseding Order render the Commission’s decision moot?
Eustis argues that the Commission’s denial on the proposed project was not based on a by-law that provides greater protection than the Wetlands Protection Act, G.L.c. 131, §40, and therefore the Superseding Order of Conditions issued by the DEP is final. Eustis bases his argument on DeGrace v. Conservation Commission of Harwich, 31 Mass.App.Ct. 132 (1991). In DeGrace, the Conservation Commission of Harwich denied the applicants’ project pursuant to a Harwich by-law. Id. at 133. The applicants appealed the Commission’s decision to the Department of Environmental Quality Engineering (DEQE),[4] and also appealed to District Court. Id. The DEQE issued a Superseding Order. In examining the appeal to District Court, the Massachusetts Court of Appeals held that the Harwich by-law did not provide greater protection than G.L.c. 131, §40 and therefore the decision of the Commission had become moot when the DEQE issued its Superseding Order. Id. at 136. The court reasoned that the Legislature reserved to the Commonwealth, acting through its agent (the DEQE), the final decision on applications for projects affecting wetland protection and therefore only a decision made pursuant to a by-law with more stringent controls than the minimum statewide standards than those set by the Legislature could be reviewed. Id. at 135.
General Laws c. 131, §40 seeks to protect the following interests: the public and private water supply, ground water supply, flood control, storm damage prevention, prevention of pollution, shellfish and fisheries, and wildlife habitat. See also 310 Code Mass. Regs. 10.01 (1994). The Bourne by-law seeks to protect all the interests enunciated in G.L.c. 131, §40 and 310 Code Mass. Regs. 10.01, but lists additional interests. These interests include erosion and sedimentation control, and recreational uses. The Bourne by-law defines all these interests as “wetland resource values” and if the Commission determines that the applicant’s project may have a adverse impact on any one of these wetland resource values, the project may be denied. (Bourne By-Law, §3.7.2.) In the case at bar, one of the Commission’s focal reasons for denying *218 Eustis’s application concerned sediment drift. Unlike G.L.c. 131, §40, the Bourne by-law expressly seeks to protect sediment flow. Accordingly, the Commission based its decision on a by-law which provides greater protection than G.L.c. 131, §40 and the Commission’s denial of Eustis’s application is properly before this court.
II. Is the Commission’s decision based on substantial evidence?
The nature of the action determines the appropriate standard of judicial review. Boston Edison Co. v. Board of Selectmen of Concord, 355 Mass. 79, 83 (1968). When considering a decision of a conservation commission, the court must determine whether the Commission’s decision was based on substantial evidence. Lovequist v. Conservation Commission of Dennis, 379 Mass. 7, 17 (1979). The substantial evidence test, the Commission’s decision must rest upon “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Boston Edison Co. v. Boston Redevelopment Authority, 374 Mass. 37, 54 (1977).
As noted from the record, the Commission based many .of its reasons on Eustis’s failure to document the effects the project would have on the benthic community, including the shellfish in the area. Under the Massachusetts Code of Regulations, any person who files a Notice of Intent pursuant to G.L.c. 131, §40 has the burden of demonstrating to the Commission that the area is not significant to the protection of any of the interests identified in the statute, or, that the proposed work will contribute to the protection of the interests identified in the statute. 310 Code Mass. Regs. 10.03 (1989).
The Wetlands Protection Act seeks to protect several land areas, including any dune or beach bordering on the ocean. 310 Code Mass. Regs. 10.02 (1989). Additionally, the Acts seeks to protect land containing shellfish. 310 Code Mass. Regs. 10.01 (1994).
When a proposed project involves altering a coastal beach, the Commission may presume that these areas are significant to several environmental interests. 310 Code Mass. Regs. 10.27 (1989). One presumption is that a coastal beach at any point serves as a sediment source for coastal areas downdrift from that point and that interruption of this natural process by man-made structures reduce the ability of the coastal beach to perform this function.[5] Id. This presumption is overcome only upon a clear showing that a coastal beach does not play a role as a sediment source. Id.
In the case at bar, Eustis fails to overcome the presumptions contained in 310 Mass. Code Reg. 10.27. Eustis’s Notice of Intent does not address the effect the extension of the breakwater would have on the disbursement of sediment downdrift. The Commission’s main concern in denying Eustis’s application is his failure to document the effects this project would have on the sediment supply to the nearby shellfish flats and the whole benthic community. The groins that are already in place trap much of the sediment bound for the shellfish flats and the Commission has legitimate concerns that extending the breakwater will further hinder the sediment from reaching these shellfish flats. Accordingly, Eustis’s failure to adequately address these concerns is fatal to his claim.
Pursuant to G.L.c. 130, §105, subsection 4A, of the Wetlands Restriction Program, the “filling, placing or dumping” any soil, loam, peat, sand, gravel, rock, or any other mineral or chemical substance on coastal wetlands in the Town of Bourne is prohibited. (See administrative record, exhibit 11.) Eustis’s Notice of Intent indicates that the project required bringing in gravel, rock and fill into the construction area. Such activity would be in direct violation of G.L.c. 130, §105, subsection 4A.
Pursuant to G.L.c. 130, §105, subsection 4E, no person shall use any coastal wetland in a manner which would destroy the natural vegetation or the coastal wetland, substantially alter existing patterns of tidal flow, obstruct the movement of sediment or alter the natural contour of the coastal wetlands in the town of Bourne. As discussed above, the Commission has legitimate concerns about the effects the proposed project would have on the benthic community and the movement of sediment toward the shellfish area. The extension of the breakwater clearly would “alter” existing patterns of tidal flow to some extent. In addition, Eustis’s plan clearly states that some of the “natural vegetation” growing on the proposed site would be destroyed. Approval of Eustis’s project would be in violation of the Wetlands Restriction Program for the Town of Bourne. Accordingly, the Commission had substantial evidence in denying Eustis’s request.
ORDER
For the foregoing reasons, the Bourne Conservation Commission’s decision is AFFIRMED.

Resource area means any area subject to protection under G.L.c. 131, §40. See 310 Code Mass. Regs. 10.04 (1989).

Certiorari is the proper vehicle for appealing a conservation commission’s decision which is based on a “local” by-law. See Lovequist v. Conservation Commission of Dennis, 379 Mass. 7, 7-9 (1979) (Commission’s denial of plaintiffs’ application to construct an access road over a cranberry bog was based on G.L.c. 131, §40 and the town’s cognate by-law, permitting the plaintiffs to seek review in the nature of certiorari and statutory appeal).

The DEQE is now the DEP.

According to 310 Code Mass. Regs. 10.27, “the oblique approach of waves moves beach sediment alongshore in the general direction of wave action. Thus, the coastal beach is a body of sediment which is moving along the shore.”