Doerfer, J.
On June 3, 1998, this matter was before the court for hearing on the Mass.R.Civ.P. 12(c) motion of plaintiff Cohasset Heights, Ltd. (“CHL”) for judgment on the pleadings. CHL filed an action in the nature of certiorari to challenge an Order of Conditions entered by the defendant Conservation Commission of the Town of Cohasset (“Commission”). As grounds for its motion, CHL argues that the Commission erred when it misapplied and misinterpreted various Department of Environmental Protection (“DEP”) regulations and applied a “zero siltation” standard to CHL’s proposed changes at its landfill. CHL also argues, in the alternative, that this proceeding should be stayed under the doctrine of “primary jurisdiction,” pending the DEP’s decision on the Commission’s appeal of a Superseding Order of Conditions entered by the DEP. The Commission opposes CHL’s motion, arguing a stay is unnecessary because it is entitled to adopt more stringent standards than the DEP, and that, on the record before it, the adoption of a “zero siltation" standard was neither arbitrary nor capricious.
For the following reasons, resolution of CHL’s motion will be STAYED pending final resolution of the parallel administrative appeal currently before the DEP.
BACKGROUND
In June 1976, the Cohasset Board of Health (“Board”) granted a site assignment for a landfill on property located on Crocker Lane in Cohasset (“the site”). In February, 1982, CHL purchased the site, which was approved to accept 299 tons of construction and demolition waste per day. Shortly after CHL purchased the site, the DEP allowed CHL to fill an isolated area of wetland on the site. Subsequently, in a 1983 Superseding Order of Conditions,[1] the DEP ordered that erosional impacts not enter the wetlands on the property.[2] In 1989, the DEP requested information from CHL regarding its erosion control measures.
In August 1990, CHL filed a Notice of Intent with the Commission regarding an erosion control plan. In April, 1991, the Commission entered an Enforcement Order under G.L.c. 141, §40, the Wetlands Protection Act (“the act”) and the Cohasset Town Wetlands Protection By-law (“by-law”), due to CHL’s ineffective stormwater management systems and the extensive siltation leaving the site. The Commission ordered CHL to amend its Notice of Intent to include measures which would prevent any siltation from migrating off-site.
In July 1992, the Commission issued an Order of Conditions to CHL pursuant to the act and the bylaw.[3] The Commission subsequently issued a comprehensive Notice of Violation in March 1994, based on CHL’s failure to comply with the terms of the July 1992, Order and CHL’s ongoing violations of the act and the by-law. Specifically, the Commission found that CHL had failed to effectively mitigate siltation, and that sedimentation, erosion, and leachate[4] had migrated off-site, having an adverse impact on the wetlands. Following that Notice of Violation, the parties met, and CHL agreed to file a subsequent Notice of Intent to address the perceived environmental shortcomings on site.
In September 1994, the Commission issued an Enforcement Order to CHL relating to the wetlands damage referenced in the Notice of Violation, and ordered certain work be performed. In August 1995, when that work had not been performed and no new Notice of Intent had been filed, the Commission issued a further Enforcement Order, in which it ordered CHL to submit a Notice of Intent, due September 1995, which was to describe the necessary mitigation measures. When the Notice of Intent was not filed by the deadline, the Commission issued a supplemental Enforcement Order to CHL in November 1995, assessing a fine of $300 per day for each day CHL failed to file the required Notice of Intent.
Finally, on December 4, 1995, CHL filed the Notice of Intent with the Commission, in which CHL described its plans to make improvements on the property[5] and to remedy the perceived erosion problems resulting from the drainage and stormwater management systems currently in place on the site. In re *668 sponse to criticisms of the December 1995, Notice of Intent, on January 9, 1996, CHL submitted a revised Notice of Intent, incorporating several of the changes sought by the Commission. An addendum to the January 9th Notice of Intent was filed on February 9, 1996. On March 27, 1996, CHL and the Commission entered into an Administrative Consent Order, whereby CHL would perform immediate restorative work of altered wetlands, create “replicated wetlands,” further study sedimentation deposits, and submit a performance bond to the Commission. In that Consent Order, the Commission and CHL continued to disagree over whether CHL had violated the act or the by-law.
Meanwhile, on February 13, 1996, the DEP had issued a Notice of Noncompliance to CHL, asserting that CHL had failed to abide by the DEP’s 1983 Superseding Order of Conditions, and had not complied with regulations governing wetlands protection, water quality, pollution discharge and solid waste disposal. In April and May of 1996, CHL provided the DEP with letters updating the agency on its progress regarding these violations.
After public hearings on CHL’s December 1995, Notice of Intent and its addendums, the Commission on July 15, 1996, entered an Order of Conditions under the act and the by-law. In that Order of Conditions, the Commission incorporated the findings of fact as found by the Board in its 1996 site assignment decision, and found that CHL’s proposed work would not adequately protect wetlands and would allow “patently unacceptable” levels of silt to migrate to a protected wetlands area; that the existing systems had caused and would continue to cause an adverse impact on the wetlands bordering the site, exacerbating existing problems; that those adverse impacts had led to “overt vegetative shifts” in some areas of the wetlands; that a 65% — 80% siltation removal efficiency rate was insufficient to meet the goals of the act and the by-law; and that stricter standards were necessary because of the past damage to the wetlands bordering the site. The Commission determined that, in order for CHL’s proposed work to proceed, CHL would be required to abide by a performance standard of zero siltation, “notwithstanding the issuance of a Superseding Order by [the] DEP.” In reaching that determination, the Commission adopted the language of 310 Code Mass. Regs. 19.130(20)(b),[6] and based its decision expressly upon both the act and the by-law. The Commission then set forth 52 Special Conditions, in addition to the General Conditions set forth in 310 Code Mass. Regs. 10.99.[7]
On September 9, 1996, CHL filed the instant action in the nature of certiorari seeking judicial review of the July 1996, Order of Conditions and asserting that the “practical effect” of the Order is “to make the system so expensive that CHL will not be able to feasibly operate the landfill." In its complaint, CHL argues that the Commission erred on many fronts, including making improper findings of fact, misapplying regulations, unlawfully enforcing regulations, and improperly requiring design standards. In the motion sub judicata, however, CHL is focusing only on the Commission’s interpretation of 310 Code Mass. Regs. 19.130(20)(b) to mandate zero siltation.
DISCUSSION
In general, the doctrine of primary jurisdiction “attempts to coordinate the decision making of administrative agencies and the courts.” Leahy v. Local 1526, Amer. Fed’n of State, County, & Mun. Employees, 399 Mass. 341, 345 n.3, citing Murphy v. Administrator of the Div. of Personnel Admin., 377 Mass. 217, 220-22 (1979). The doctrine “requires prior resort to an administrative agency ‘where that procedure would secure uniformity and consistency in the regulation of business entrusted to a particular agency,’ or ‘when the issues involve technical questions of fact uniquely within the expertise and experience of an agency.’ ” Casey v. Massachusetts Elec. Co., 392 Mass. 876, 879 (1984), quoting Nader v. Allegheny Airlines, 426 U.S. 290, 303-04 (1976).
Here, however, CHL has already commenced the appropriate administrative proceedings. It appealed to the DEP under the act, and filed this certiorari review based upon the Commission’s decision under the town’s by-law. See T.D.J. Dev. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 125, 126, rev. denied, 418 Mass. 1103 (1994). Accordingly, the applicable doctrine is one of exhaustion, rather than prior resort. Stock v. Massachusetts Hosp. School, 392 Mass. 205, 213 n.13 (1984), cert. denied, 474 U.S. 844 (1985). “The exhaustion doctrine provides that, as a general rule, all available administrative remedies should be exhausted before resort to the courts. Application of the doctrine serves to preclude judicial consideration of a question while there remains any possibility of further administrative action. Even where there exists an alternate judicial remedy, any available administrative action that may afford some relief, or may affect the scope or character of judicial relief should be exhausted prior to independent action in the courts.” Belanger v. Commonwealth, 41 Mass.App.Ct. 668, 675 (1996) (citations omitted).
In this case, DEP’s resolution of the parallel proceedings before it may render moot any decision this court makes here regarding the reasonableness of the Commission’s decision to adopt a zero siltation standard. The Commission expressly adopted the language set forth in 310 Code Mass. Regs. 19.130(2)(b), and incorporated that putative zero siltation standard into its decision under the act and the by-law as CHL’s performance standard. As a result, this is not the case where a local commission has adopted stricter standards under its own by-law than provided for in the act. Compare Fafard v. Conservation Comm’n of Read *669 ing, 41 Mass.App.Ct. 565, 568 (1996) (citations omitted) (“It is common ground that the town, under its by-law, could set wetland protection standards that were more demanding than those of the State scheme”). Rather, the Commission specifically “adopted and incorporated [a section] of the regulations promulgated by the Commonwealth pursuant to the act." DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. 132, 136 (1991). “Since the town chose not to impose ‘more stringent controls’ than those set by the Legislature concerning those areas which are subject to wetland protection, it follows that the [DEP] had the authority to issue a superseding order.” Id.
If, as appears to be the case from the pleadings filed with this court, the DEP disagrees with the Commission’s interpretation of the regulation and has determined that 310 Code Mass. Regs. 19.130(20)(b) does not require a zero siltation standard, the outcome of the Commission’s appeal of the DEP’s Superseding Order would render this court’s decision here a nullity. A superseding order based upon the DEP’s regulations would preempt the order of the Commission. Id. Contrast FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. 681, 687 (1996), rev. denied, 424 Mass. 1104 (1997) (citations omitted) (“When a local conservation commission rests its decision upon a wetlands by-law that provides greater protection than the act, its decision cannot be preempted by a DEP superseding order”).
Because any Superseding Order issued by the DEP in the parallel proceeding before it might preempt the Commission’s determination that the town’s by-law requires a stricter performance standard, i.e. zero siltation, this court will stay resolution of CHL’s motion for judgment on the pleadings pending the final resolution of the DEP appeal. See DeGrace, 31 Mass.App.Ct. at 136 (appeal to the court of the commission’s order was moot once DEP issued superseding order).
ORDER
For the foregoing reasons, it is hereby ORDERED that resolution of the Rule 12(c) Motion for Judgment on the Pleadings of plaintiff Cohasset Heights, Ltd., is STAYED pending the completion of the administrative appeal process currently pending before the DEP. The parties shall thereafter serve and file a new motion under Rule 9A which reflects the action of the DEP, if the parties at that time have issues which the court should resolve.

 The administrative record is not clear regarding what role, if any, the Commission played in these early proceedings.

 In 1988, CHL sought to expand the landfill. Although the DEP issued a Site Suitability Certificate, the Board denied a site assignment. CHL appealed that denial.

 This July 1992, Order of Conditions is attached to the complaint, but is not the Order from which CHL is appealing.

 Leachate is “a liquid formed by rainwater percolating down through the layers of refuse in the landfill.” Norfolk v. Department of Envtl. Qual Eng'g, 407 Mass. 233, 234 (1990).

 CHL withdrew their operational phase of the proposed expansion on June 18, 1996, during the pendency of the public hearings on the December, 1995, Notice of Intent.

 That regulation states in relevant part that “the [landfill] operator shall ensure that siltation due to erosion shall not migrate off-site.”

 Papers filed in this action indicate that CHL appealed the July, 1996, Order of Conditions to the DEP, as well as to this court, because the Commission relied in part upon state regulations. On November 26, 1997, the DEP issued a Superseding Order of Conditions, in which it interpreted 310 Code Mass. Regs. 19.130(20)(b) to require only “best management practices,” not zero siltation. The Commission has appealed that decision.
Because this Superseding Order was, obviously, not part of the record before the Commission, and CHL’s motion to submit extra-record materials was denied by the court (Burnes, J.), the terms of the Order are not before this court.