Hines, J.
INTRODUCTION
In this action, the plaintiff, Wallstreet Development Corporation (“Wallstreet”), seeks review in the nature of certiorari of a decision of the Hopkinton Conservation Commission (“Commission”) denying plaintiffs application for an Order of Conditions to build a single-family home on land subject to the Hopkinton Wetlands Protection Bylaw (“Bylaw”). After review of the Record of the Proceedings Before the Hopkinton Conservation Commission and consideration of the parties’ written submissions, the Commission’s decision is AFFIRMED and the plaintiffs motion for judgment on the pleadings is DENIED.
BACKGROUND
The plaintiff is the owner of a 1.8-acre parcel of land largely consisting of wetland located at 12 North Mill Street in Hopkinton. An intermittent stream runs from northwest to southeast across the property. That stream drains a 50-acre watershed and is a tributary of Cold Spring Brook. A large man-made pond is sited at the northwest comer of the lot. A variety of plant species common to wetlands, including red maple, gray birch and shrubs are found in abundance on the lot.
On August 30, 1996, Wallstreet submitted a Notice of Intent (“NOI”) to the Commission for the construction of a single-family house on an upland area near the rear of this lot. Pursuant to G.L.c. 131, §40, the Wetlands Protection Act (the “Act”) and the Bylaw, a NOI is required for any activity that may have an impact on a wetlands resource area or buffer zone. Under the Bylaw, an applicant bears the burden of demonstrating that the proposed activity will not have an unacceptably adverse impact on a protected area. Wallstreet’s proposed project, which includes a driveway, two wells, utilities and septic system, affects the wetland resources as defined by the Bylaw. The house and septic system are within the 100-foot buffer zone for the vegetated wetlands and the intermittent stream. One of the wells is within the 50-foot building limit. The driveway is an elevated stmcture 300 feet long and 10 feet wide with a one-foot horizontal gravel margin on each side. It crosses 190 linear feet of bordering wetland associated and an intermittent stream. The driveway will permanently alter 2,777 square feet of bordering vegetated wetland to be replicated by constructing 4,374 square feet of new wetland near the front of the site.
The Commission convened public hearings on Wallstreet’s NOI beginning on September 16, 1996. The hearings continued on December 16, 1996, January 13, 1997, February 3, 1997, February 24, 1997, April 14, 1997 and April 28, 1997. During these hearings, the Commission addressed various issues, including whether construction of the planned 10-foot driveway likely could be contained within the proposed 14-foot construction zone; whether Wallstreet considered alternatives that would not involve damage to wetlands; and whether the lot could be built at all if vernal pools are present on the site. Throughout the hearings, Wallstreet disputed the presence of vernal pools on the site and maintained that it had no alternative access to the site other than by crossing wetlands.
On May 20, 1997, the Commission issued its decision denying the proposed construction. As reasons for its denial, the Commission cited Wallstreet’s failure to come forward with sufficient information to evaluate the impact of the proposed development on the wetland areas and resources under the protection of the Bylaw. The Commission also cited the presence of vernal pools which, according to the Bylaw, are entitled to a “presumptive 100-foot undisturbed buffer.”
Bypassing an appeal under the Bylaw, Wallstreet appealed to the Massachusetts Department of Environmental Protection (DEP) for a Superseding Order of Conditions. After conducting a site inspection, the DEP issued a Superseding Order of Conditions certifying that the project complied with the Act and the applicable regulations.[1] DEP concluded that vernal pools, as defined under the Act, did not exist on the site.[2] At the same time, DEP cautioned that its finding could not override a decision based on a local bylaw. DEP’s letter reminded Wallstreet that “[t]he Department was required to limit its review to whether the *561 requirements under the Wetlands Protection Act and its regulations have been met. Local Wetland Bylaw requirements involve a separate review process, over which the Department has no authority over.”
Armed with this Superseding Order of Conditions, Wallstreet submitted a second Notice of Intent (“NOI”) to the Commission on November 12, 1997. This second NOI was essentially identical to the previous NOI denied by the Commission on May 20, 1997, except that Wallstreet now had the benefit of DEP’s declaration regarding the existence of vernal pools on the site. Relying on DEP’s approval of the plan under the Wetlands Protection Act, Wallstreet requested that the Commission approve the plan under the Bylaw.
The Commission opened the public hearing on Wallstreet’s second NOI on December 1, 1997. During this hearing, the Commission urged Wallstreet to address each of the thirteen points of concern raised in the denial of the prior NOI, especially the issue of vernal pools. The Commission attributed the highest importance to the resolution of the vernal pool issue because “no crossings of vernal pool habitats are allowed by the Conservation Commission.” The plaintiff appeared at the hearing accompanied by his expert Dr. Jerome Carr, a professional wetland scientist. Dr. Carr submitted a letter reiterating his position stated during the first set of hearings that the man-made skating pond on the site was a permanent woodland pool, not a vernal pool. During the hearing certain members of the Commission countered that they observed “small vernal pools” in the vegetated area on or near the driveway crossing. The hearing was continued to January 5, 1998.
At the January 5, 1998 hearing, Dr. Carr again appeared for the plaintiff and outlined further changes to the plan. The Commission expressed concern whether the driveway could be built within the 14-foot construction zone, especially since Wallstreet’s principal had been fined for violations of conditions in constructing a driveway at another site in the town.[3] At least one Commission member expressed doubt that its enforcement powers would be sufficient to prevent a prospective violations of conditions at the site. The Commission insisted that a 24-foot limit of disturbance was more realistic based on its past experience with Wallstreet at the other site. Dr. Carr attempted to allay the Commission’s concern by pointing out that the Commission could enforce its standards through the Certificate of Compliance. The Commission disputed the efficacy of relying on the Certificate alone with one member expressing the view that contractors violate requirements and pay fines willingly, as the price of doing business. The Commission requested further attempts at alternate access and noted its concern with the 100-foot buffer and not just the presumptive setbacks. The Commission unanimously voted to close the hearing, noting that a decision would be based on the information in the record as of that date.
After reviewing the information in the record, the Commission found that the proposed work would have a significant impact in the following areas subject to protection under the Act: public water supply, private water supply, ground water supply, flood control, storm damage prevention, prevention of pollution, fisheries, and protection of wildlife habitat. Under the Bylaw, the Commission identified the following additional wetland interests as being impacted by the plaintiffs proposed construction: erosion and sedimentation control, wildlife and recreational values. On January 27, 1998, the Commission issued a second Order of Conditions under the Bylaw denying Wallstreet’s application to build on the lot.
In this action filed on March 28, 1998, Wallstreet seeks judicial review of the Commission’s decision. The defendant filed the record of its proceedings on September 1, 1998. The plaintiff filed his motion for judgment on the pleadings on August 4, 2003.
DISCUSSION
This court is authorized to review, in the nature of certiorari, G.L.c. 249, §4, a decision of a local conservation commission made under its wetland bylaw. FIC Homes of Blackstone v. Conservation Commission, 41 Mass.App.Ct. 681, 684 (1996). A civil action in the nature of certiorari serves to correct errors in administrative proceedings where oversight is not otherwise provided by statute. The court is empowered to disturb the administrative decision only on a showing of “substantial errors of law that affect material rights and [that] are apparent on the record.” G.L.c. 249, §4.
The standard for certiorari review varies according to the nature of the action sought. Forsyth Sch. for Dental Hygienists v. Bd. of Registration in Dentistry, 404 Mass. 211, 217 (1989); FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. at 684. “Here, where the action sought to be reviewed was the proper exercise of the commission’s discretion in the imposition of conditions for the protection of wetlands, an ‘arbitrary and capricious’ standard should be applied.” Forsyth Sch. for Dental Hygienists v. Bd. of Registration in Dentistry, 404 Mass, at 217. A decision is not arbitrary or capricious unless there is no ground which “reasonable men might deem proper” to support it. T.D.J. Dev. Corp. v. Conservation Comm’n of N. Andover, 36 Mass.App.Ct. at 124, 128-29 (1994), citing Cotter v. Chelsea, 329 Mass. 314, 318 (1952). “If the agency has acted for reasons that are extraneous to the prescriptions of the regulatory scheme, but are related, rather, to an ad hoc agenda, then that agency has acted arbitrarily because the basis for action is not uniform, and, it follows, is not predictable.” Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 568 (1996).
*562 The standard for a finding that the Commission’s decision is arbitrary and capricious is not easily met. “The court should be slow to decide that a public board has acted unreasonably or arbitrarily. The court should cast about to discover, if possible, some ground which reasonable men might deem proper on which the action can rest.” Dubuque v. Conservation Comm’n of Barnstable, 58 Mass.App.Ct. 824, 829, n. 9 (2003), quoting Cotter, 329 Mass, at 318. I consider the plaintiffs request for relief in the context of this standard of review.
The analysis begins with the scope of the authority granted to the Commission. The Bylaw empowers the Commission to deny a permit in certain delineated circumstances:
1. Failure to meet the requirements of the Bylaw;
2. Failure to submit necessary information and plans requested by the Commission;
3. Failure to meet design specifications, performance standards or other requirements in the regulations of the Commission;
4. Failure to avoid or prevent significant detrimental effects upon the wetland protected by the bylaw;
5. Failure to provide sufficient information;
6. Where no condition would be adequate to protect the values set forth [in the bylaw]. Wetland Bylaw, Section 7.3.
In denying Wallstreet’s permit, the Commission concluded that: 1) the project would result in a greater disturbance to the wetlands than that shown on the plan submitted by Wallstreet; 2) the project will have a long-term consequence with future encroachment by successor owners; 3) Wallstreet failed to exhaust alternative means of access; and 4) the proposed driveway would destroy vernal pools on the site. Wallstreet disputes the validity of these grounds for the denial and urges this court to remand the matter with an order compelling the Commission to issue an Order of Conditions allowing the project. I consider each of Wallstreet’s arguments in turn.
Wallstreet argues that the Commission exceeded its authority in denying the permit on the first and second grounds because the Commission improperly relied on past and prospective violations. I agree that these grounds for the Commissions decision are not supported by the Bylaw and that, as a result, the denial of the permit on these grounds is arbitrary and capricious.
Despite the wide latitude granted to the Commission, neither of these two grounds is a legally tenable basis for denial of the permit. To illustrate the more clearly the fault with the Commission’s first reason for the denial of the permit, I quote it in its entirely:
The actual disturbance and filling that will result from the building of the proposed driveway will be closer to 24 feet in width than to the 13 to 16 feet shown on plans. Recent experience with a veiy similar driveway, on a project of the same applicant, supports this conclusion. In that case (DEP File #188-697, Lots 22 and 31 Clinton St.), the applicant, operating under a Final Order of Conditions, was fined $6,000 by the State DEP for violating the Order by making a 13 to 27 foot wide swath through a bordering vegetated wetland for a driveway whose planned width was similar or identical to the present proposal. A 24 foot width results in an area of disturbed wetland of about 4560 square feet (24 by 190), and not the 2777 square feet acknowledged on the plans. Under the Bylaw, replication must be in the ratio of 1:5:1 (or 6840 square feet of replication), a requirement not met by the proposal.
Though it was not necessary to refer to the plaintiffs prior violation in questioning the credibility of its representations on the size of the disturbance necessary for the construction of the driveway, the Commission did so. This reference coupled with the complete lack of any other information supporting the denial on this ground leaves the prior violation as the only basis for the denial. This is legally insufficient inasmuch as a prior violation is not a legally tenable ground for denial of an application that on its face otherwise complies with applicable law. Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. at 571, citing Dowd v. Bd. of Appeals of Dover, 5 Mass.App.Ct. 148, 157 (1977).
The concerns with prospective -violations or future permitting requests likewise are not legally justifiable grounds' for denial of the permit to Wallstreet. In articulating the second ground for denial, the Commission concluded as follows:
Furthermore, the Commission is concerned with the long-term consequences of having such a long, narrow, elevated roadway crossing a valuable wetland resource. From past experience, including the house in the above-mentioned Clinton St. lot (File #188-697), the eventual owners will most likely want to widen the drive or a wide shoulder for real or perceived reasons of safely in winter. For this additional reason, the Commission finds that the wetland disturbance is understated in the proposal and is unacceptable under the Bylaw.
Wallstreet cannot be held hostage in the present as a shield against future violations or proposals that a future owner may choose to submit. To the extent that an enforcement problem may be created in the future, an adequate remedy has been provided by statute. Id. In this case, both the Bylaw and the Act include enforcement provisions. Hopkinton Wetlands Protection Act, Section 13. See also 310 CMR 10.08. The decision on a permit must be separate from enforcement of future violations. The Commission’s decision on this ground compels the conclusion that the *563 decision is arbitrary and that the Commission exceeded its legitimate authority under the Bylaw.
The Commission’s third reason for the denial of the Order of Conditions is based on its conclusion that Wallstreet failed to demonstrate adequate steps to avoid wetlands crossings. Wallstreet complains that this reason is not supported by substantial evidence. To begin, the Commission is clearly empowered to deny the permit on this ground. The Bylaw provides as follows: “The Commission is empowered to deny a permit... for failure to avoid or prevent significant or cumulative detrimental effects upon the wetland values protected by this bylaw . . .” Hopkinton Wetlands Protection Act, Section 7, Section 7.3. In addition, the Act requires a description of alternatives explored that would allow the project to proceed in compliance with 310 CMR 10.21 through 10.60 and an explanation of why each is unreasonable when requesting a variance. 310 CMR 10.05(10) (b) 1. Several times during the public hearings the Commission reiterated its concern about alternatives to the construction of the proposed 300-foot driveway across 190 linear feet of wetland. The evidence of record is that the site is surrounded by bordering vegetated wetlands. The record also contains Wallstreet’s report that it attempted and failed to secure permission for alternative access through an abutter’s land.
Wallstreet’s assertions to the contrary, the Commission could legitimately decide as it did, that Wallstreet did not offer sufficiently “credible” evidence of its efforts to devise an alternative plan. See Bylaw, Section 14 (“The applicant for a permit shall have the burden of providing by a preponderance of the evidence that the work proposed in the permit application shall not have an unacceptable significant or cumulative effect upon the resource area values protected by this bylaw”). Though the Commission could have accepted Wallstreet’s proffer on this point, it was not required to do so. Considering the totality of the impact of Wallstreet’s proposal, it is reasonable for the Commission to require proof, other than Wallstreet’s bare assertion, that access to the abutter’s land was sought and refused. Nor is this an onerous burden. Wallstreet could easily prove its claim of no alternative access by providing written documentation of the request and denial. The lack of such documentation is an adequate factual foundation for the Commission’s denial on this ground.
Wallstreet’s final challenge asserts that the Commission’s denial of the permit application is preempted by DEP’s Superseding Order of Conditions. Under G.L.c. 131, §40, DEP has the authority to overrule a local conservation commission decision based on the Act by issuing a “superseding order of conditions” or “superseding denial.” DeGrace v. Conservation Commission of Harwich, 31 Mass.App.Ct. 132, 136 (1991). The court in DeGrace court distinguished the town Bylaws having greater protection for wetlands and town Bylaws that specifically adopt and incorporate the Act. Id. at 135-36. DeGrace affirms that DEP retains final authority under the Act where a denial is based on a local Bylaw or ordinance that is no more stringent than the Act. Id. at 136. In DeGrace, the town chose not to impose more stringent controls than those set by the Legislature concerning those areas which were subject to wetland protection. Therefore, DEP had the authority to issue a superseding order.
Such authority does not lie, however, to overrule a local conservation commission decision under a local bylaw that is more stringent than the Act. In FIC Homes of Blackstone, Inc. v. Conservation Commission, supra, the plaintiff appealed a denial of the conservation commission to Superior Court claiming that the commission had acted arbitrarily and capriciously in denying the Order of Conditions and that the subsequent Superseding Order of Conditions issued by the DEP preempted the commission’s denial. Id. at 682. Finding that the Blackstone Wetlands Bylaw clearly afforded greater protection than the Act, id. at 687, the Appeals Court affirmed the lower court’s ruling that the Blackstone Conservation Commission’s denial was not preempted by the DEP’s Subsequent Order of Conditions. Id. at 682. Thus, it is well established that a municipality, under its Bylaw, can set wetland protection standards that are more demanding that those of the State scheme. Fafard, 41 Mass.App.Ct. at 568. See also T.D.J. Dev. Corp., 36 Mass.App.Ct. at 125-26.
The Act, G.L.c. 131, §40, “establishes minimum statewide standards leaving local communities free to adopt more stringent controls.” T.D.J. Dev. Corp., 36 Mass.App.Ct. at 125-26, quoting Golden v. Selectmen of Falmouth, 358 Mass. 519, 526 (1970). A municipality may adopt bylaws or ordinances that impose more stringent controls than the standards set by the Legislature, and these more stringent requirements trump the State requirements. T.D.J. Dev. Corp., 36 Mass.App.Ct. at 125-26. When a local conservation commission rests its decision on a wetlands bylaw that provides greater protection than the act, its decision cannot be preempted by a DEP superseding order. DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. at 136, citing Hamilton v. Conservation Comm’n of Orleans, 12 Mass.App.Ct. 359, 368 (1981).
Wallstreet argues that the Commission’s denial does not implicate a Bylaw more stringent than the Act on any of the asserted grounds and that, therefore, DEP’s superseding order of conditions controls the permitting decision in this case. The superseding order of conditions does not compel a reversal of the Commission’s decision because the Bylaw is more stringent than the Act as to at least two of the four grounds for denial.
First, the Bylaw requires replication of altered bordering vegetated wetland at a 1.5:1 ratio, while the Act *564 requires replication of 1:1. On this basis, the Commission could properly deny the permit where Wallstreet’s proposed replication of the wetland altered for the driveway construction did not follow this formula.[4]
Second, the Bylaw is more stringent in its protection of vernal pools. The Commission concluded that “[t]he driveway would destroy vernal pools found in the vegetated wetlands on or near the driveway crossing. The applicant has made no attempt to refute the existence of these vernal pools, and the Bylaw requires a 100-foot wide buffer to meet the habitat requirements of species which breed in vernal pools.” Wallstreet asserts that this ground for the denial of the permit is preempted by DEP’s Superseding Order of Conditions which concludes that vernal pools, as defined by the Act, do not exist on the site. A careful reading of DEP’s letter of November 6, 1997 demonstrates, however, that DEP purposely did not presume to overrule the Commission on the vernal pools issue. Rather, DEP emphasized that it “did not consider this area [vernal pools] in the appeal process” because the Commission denied the permit under the Bylaw and DEP has no authority over the review under the Bylaw.
Indeed, vernal pools are defined more broadly in the Bylaw than in the Act. Under the Act, “a vernal pool habitat is presumed to exist on a property only if it has been certified and mapped prior to the filing of a Notice of Intent.” The Bylaw provides that “the term ‘vernal pool’ shall include a confined basin depression which, at least in most years, holds water for a minimum of two continuous months during the spring and/or summer, and which is free of adult fish populations, as well as the area within 100 feet of the mean annual boundary of such depression, regardless of whether the site has been certified by the Massachusetts Division of Wildlife and Fisheries." Hopkinton Wetlands Protection Bylaw, Section 10 (emphasis supplied). This definition, extending the protection of the Bylaw to a larger area than that covered under the Act,[5] clearly is a more stringent regulation thereby precluding preemption as urged by Wallstreet.
Finally, I deal with Wallstreet’s claim that the Commission’s finding that vernal pools exist on the site is not supported by substantial evidence. The Commission is presumed to possess the necessary expertise to identify the protected areas within the scope of its authority. Acting pursuant to this authority, the Commission identified “small vernal pools” near the proposed driveway during a walk-through of the site. As to these small vernal pools, Wallstreet offered no evidence to dispute their existence. Instead, Wallstreet proposed the placement of “at least one dozen micro-depressions” in the replication area to accommodate the wildlife habitat. Without an attempt to rebut the Commission’s claim that small vernal pools existed on the site, Wallstreet cannot be heard to complain that the denial on this basis is unsupported by substantial evidence.
In addition to the small vernal pools, the Commission presumed that the man-made pond on the site was also a vernal pool and invited Wallstreet to rebut this presumption in its presentation on the NOI. Wallstreet resubmitted its expert testimony disputing the classification of this man-made pond as a vernal pool. Though the Commission's own expert did not definitively conclude that the man-made pond was in fact a vernal pool, the Commission rejected Wallstreet’s expert opinion to the contrary. This is a close question, given Wallstreet’s expert rebuttal. The resolution of the issue comes down to burden of proof. Wallstreet argues that the Commission submitted no evidence to prove the existence of vernal pools on the site. If in fact the Commission bears the burden to prove the existence of vernal pools, its expert opinion clearly is inadequate to meet this burden. This lapse confers no benefit on Wallstreet, however, because it is not the Commission’s burden to prove the existence of vernal pools. Rather, Wallstreet bears the burden to disprove the existence of vernal pools. The Commission, using its expertise, was free to evaluate Wallstreet’s evidence on the issue and decide that it was insufficient to prove that the pond is not a vernal pool.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for Judgment on the Pleadings be DENIED.

 31 CMR 10.55.

In this regard, the DEP letter to Wallstreet states the following: “Secondly, under the Wetlands Protection Act and its regulations, vernal pool habitat is presumed to exist on a property only if it has been certified and mapped prior to the filing of the Notice of Intent. The ponded area was not a certified vernal pool. Therefore, the Department did not consider this ponded area an issue under the Wetlands Protection Act and its regulations.”

The Commission referred to violations by the plaintiff in construction of another single-family house and driveway on Hopkinton wetland on Clinton Street. In December of 1995, the DEP entered into a Consent Agreement under which the plaintiff agreed to pay the DEP a $1,000 civil administrative penalty and the Commission a $5,000 contribution in lieu of penalty for work done on the Clinton Street project in violation of the Final Order.

In the discussion above, I reject this basis for the Commission’s denial. Nonetheless, if this was a valid ground for the denial, the Commission’s decision would not be affected by the superseding order of conditions.

“Except as permitted by the Conservation Commission or as provided in this Bylaw, no person shall commence to remove, fill, dredge, build upon, degrade, discharge into, or otherwise alter the following resource areas: ... vernal pools ...” Hopkinton Wetland Protection Act, Section 2.