Lauriat, J.
The plaintiff, Barry Gilbert (“Gilbert”) contests a decision by the Conservation Commission of the Town of Wayland (“the Commission”) designating Mill Pond in Wayland as a perennial stream and land adjacent to the Pond as a “riverfront area,” thus falling under Wayland’s Wetland and Water Resources Bylaw (“the Wayland Bylaw”). Gilbert has appealed the Commission’s decision both to this court, pursuant to G.L.c. 249, §4, and to the Massachusetts Department of Environmental Protection (“the DEP”), pursuant to G.L.c. 141, §40 and 310 C.M.R. §10.03(7). In the present action, Gilbert also seeks a declaratoiy judgment pursuant to G.L.c. 131A, §2.
Gilbert has now moved for judgment in his favor on the pleadings, pursuant to Mass.R.Civ.P. 12(c). Forthe following reasons, Count II of Gilbert’s Motion for Judgment on the Pleadings is allowed.[1]
BACKGROUND
Gilbert owns land in Wayland, Massachusetts that abuts Mill Pond. Although he did not intend to immediately build on his land, Gilbert sought a determination from the Commission as to whether the Commonwealth’s Wetland Protection Act (“WPA”) or the Wayland Bylaw applied to his land.[2] The specific issue before the Commission was whether Mill Pond, its name not withstanding, was, for purposes of the WPA or the Wayland Bylaw, a pond or a body of water with riverine characteristics. The difference is significant because if Mill Pond has riverine characteristics, the land abutting it would be considered a “riverfront area” and thus subject to greater restrictions on its development. See 310 C.M.R. §10.58; Wayland Bylaw§ 194-2.15.
The Commission held a public hearing on the matter on March 13, 2003. At the hearing the evidence focused on whether or not the water in Mill Pond was flowing year round in a single direction. Gilbert produced evidence of a dye test and expert testimony tending to demonstrate that the Pond lacked a unidirectional flow of water. He also produced a United States Geological Survey map that identifies Mill Pond as a pond. In contrast, other evidence that was produced at the hearing, such as visual observations of the dredging of the Pond, the flow of snow and ice on the Pond, the thawing pattern of the water, and photographs of the water during the winter, tended to show that the water did flow in a single direction. Based on this evidence, the Commission determined that the water in Mill Pond was a perennial stream, because the water “flows in a hydraulic gradient” and that the water “has an associated riverfront area as defined by Wayland’s Wetland and Water Resources Bylaw...” Gilbert appealed that decision to this court pursuant to G.L.c. 249, §4 and G.L.c. 141, §40, and to the Northeast Regional Office of DEP pursuant to G.L.c. 141, §40 and 310 C.M.R. §10.03(7). On February 11, 2004, the Northeast Regional Office of DEP affirmed the Commission’s decision and Gilbert appealed that determination to the DEP Office of Administrative Appeals. The DEP has not yet issued its final decision.
DISCUSSION
As a preliminary matter this Court must first determine whether or not the Wayland Bylaw on which the Commission based its decision affords greater protection to wetlands than the WPA. See FIC Homes of Blackstone v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. 681, 687 (1996) (noting that “if a conservation commission rests its decision on a wetlands by-law that provides greater protection than the [WPA], its decision cannot be preempted by a DEP superseding order”); T.D.J. Development Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 126 (1994) (same); DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. 132, 135-36 (1991) (same). If the Wayland Bylaw is not more stringent than the WPA, the DEP’s decision-will supersede the Commission’s decision and any substantive analysis of the Commission’s decision becomes moot. See id. The defendants assert the Wayland Bylaw is more protective than the WPA because its stated purpose is to afford more protection and because it seeks to protect more values. Thus, the defendants argue that the Commission’s decision should stand notwith *482 standing a contrary decision by DEP. The court disagrees.
I.
The inquiry focuses on the provisions of the Way-land Bylaw that relate to the Commission’s decision. See T.D.J. Development Corp., 36 Mass.App.Ct. at 126. Although not specifically noted by the Commission, it relied on section 194-2.13 and 194-2.15, which define “stream” and “riverfront area.”[3] Wayland Bylaw §194-2.13 defines “stream” as “a body of running water, and the land under the water... which moves in a definite channel in the ground due to hydraulic gradient in a definite path.” Wayland Bylaw §194-2.15 defines “riverfront area” as “that area of land situated between a perennial stream’s mean annual high-water line and a parallel line located a maximum of 200 feet away, measured outward horizontally from the stream’s mean annual high-water line.” The Commission’s decision mirrored the language of these sections, finding that the water in Mill Pond flowed “in a hydraulic gradient,” and thus it was a perennial stream.
The defendants contend that the Commission, in its decision, relied on Wayland Bylaw § 194-1.0, which is more protective than the WPA and related regulations. See 310 Code Mass. Regs. §10.58(1). Section 194-1.0 states that the purpose of the Wayland Bylaw is to “provide a greater degree of protection of wetlands, buffer zones, and related water resources, than the protection of these resource areas provided under [the WPA] and the Wetlands Regulations ...” This section also identifies more values protected by the Wayland Bylaw than are protected in the WPA and related regulations. See 310 Code Mass. Regs. §10.58(1). Although this section provides greater protection than the WPA, the Commission did not base its decision on this section.
This case is unlike T.D.J. Development Corp. v. Conservation Comm’n of North Andover, supra., where the court found that the conditions imposed by the conservation commission of North Andover were based upon the values contained in the town’s bylaws and not those values recited in the WPA or corresponding regulations. See 36 Mass.App.Ct. at 129. In that Case, the issue was the validity of certain conditions imposed on the plaintiff by the conservation commission. Id. at 125. The court determined that the North Andover conservation commission imposed certain conditions that could not have been imposed under the WPA because the conditions protected interests stated in the by-laws but not interests stated in the WPA. Id. at 129.
By contrast, in determining whether or not the water in Mill Pond was a perennial stream, the purpose section of the Wayland Bylaw was not relevant. The only sections of the Bylaw that were relevant to the Commission’s decision were those that defined “stream” and “riverfront.” This case is similar to DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. at 134. There, the Harwich conservation commission decided that the plaintiffs land was a “wetland.” Id. The court found that the commission based its decision the definition section of its bylaw. Id. at 136. Because the bylaw specifically incorporated the definitions section of the WPA, it was not more stringent than the WPA and thus the DEP decision superseded the commission’s decision. Id.
The Commission’s decision will stand only if sections 194-2.13 and 194-2.15 of the Wayland Bylaw afford greater protection than the WPA or its related regulations.
II.
The defendants concede that the definition of “riverfront” in the Wayland Bylaw does not provide more protection than the WPA. And while the Wayland Bylaw defining “stream” encompasses more than the WPA or the regulations, the part of the definition relied on by the Commission does not.[4] The relevant portion of the Wayland Bylaw defines stream as “a body of running water . . . which moves in a definite channel in the ground due to a hydraulic gradient in a definable path.” Wayland Bylaw § 194-2.13. The relevant portion of the regulation define “stream” as “a body of running water... which moves in the ground due to a hydraulic gradient . . .” 310 Code Mass. Regs. §10.04. Because the Commission utilized a definition of stream that was not more encompassing than the definitions provided by the WPA or its regulations, the Commission’s determination that Mill Pond has riverine characteristics and in associated “riverfront area” may be superseded by the decision of the DEP. See DeGrace, 31 Mass.App. at 135-36 (1991). It should be noted that as of this date, the DEP Office of Administrative Appeals has not rendered or reported its decision on Gilbert’s pending appeal. When the final DEP decision is made, it will supersede the decision of the Commission.
ORDER
For the forgoing reasons, the Motion for Judgment on the Pleadings is ALLOWED as to Count II, and is therefore moot as to the remaining counts of the Complaint.

In Count I of his complaint, Gilbert seeks review of the Commission’s decision. In Count II, he seeks a declaration that the DEP’s decision supersedes the decision of the Commission. In Count III, he seeks a declaration that his land is not a “riverfront area.” And in Count IV, he seeks a declaration that the Wayland Bylaw is invalid. Because the court finds that DEP’s decision supersedes the Commission’s decision, it is unnecessary for the Court to address the remaining counts in Gilbert’s complaint.

Gilbert filed a request for a “Determination of Applicability.” See G.L.c. 131, §40; Wayland Bylaw §194-3.

Gilbert argues that the Commission must have relied on the WPA’s definition of “river” because “river” is not defined by the Wayland bylaws. Gilbert finds it “curious” that the bylaws define “riverfront area” but not “river.” However, Way-land Bylaw 194-2.15 defines “riverfront area” as an area of land situated between a perennial stream’s mean, annual *483 high-water line and parallel line ..." (emphasis added). Way-land Bylaw 194-2.13 defines "stream” and it is this definition utilized by the Commission.

“Stream” is defined in the WPA regulations as “a body of running water, including brooks and creeks, which moves in a definite channel in the ground due to a hydraulic gradient, and which flows within, into or out of an Area subject to Protection Under M.G.L.c. 131, §40. A portion of a stream may flow through a culvert or beneath a bridge. A portion of a stream which does not flow throughout the year (i.e., which is intermittent) is a stream except for that portion upgradient of all bogs, swamps, wet meadows and marshes.” 310 Code Mass. Regs. §10.04. The Wayland Bylaw is more encompassing in four respects. First, the Wayland Bylaw protects man-made streams, whereas the regulations do not. Secondly, the Wayland Bylaw protects streams that do not flow within, into or out of an area subject to the WPA. The regulations do not. Third, the Wayland Bylaw protects streams when portions of the streams flow through pipes. The regulations do not. Finally, the regulations do not encompass in their definition of “stream” that portion of an intermittent stream that is upgradient of all bogs, swamps, wet meadows and marshes. The Wayland Bylaws does not exclude these portions of streams from the definition of “stream.” However, there was no evidence in the present case that the body of water at issue in this case is man made, does not flow into an area subject to the WPA, flows through a pipe, or is a portion of a stream that is upgradient of bogs, swamps, wet meadows or marshes.